9 Cal.App.4th 644 (1992)
11 Cal. Rptr.2d 850
DUNN-EDWARDS CORPORATION et al., Plaintiffs and Appellants,
v.
BAY AREA AIR QUALITY MANAGEMENT DISTRICT, Defendant and Appellant.
Docket No. A055155.
Court of Appeals of California, First District, Division Three.
September 16, 1992.
*648 COUNSEL
Donnelly, Clark, Chase & Smiland, William M. Smiland, Robert M. Newell, Jr., and Thomas N. Campbell for Plaintiffs and Appellants.
John F. Powell, Lawrence G. Chaset, Toby Sherwood and Thomas H. Crawford for Defendant and Appellant.
OPINION
WHITE, P.J.
Bay Area Air Quality Management District (the District) appeals from a judgment granting a peremptory writ of mandate ordering the *649 District to set aside its regulation 8 amendments relating to certain architectural coatings adopted on January 17, 1990. The plaintiffs who obtained the writ cross-appeal on the ground the writ should be effective as of the date of the judgment. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[1]
The plaintiffs in this action are 21 California manufacturers, retailers and contractors who make, sell, and apply various enamels, lacquers, and paints (architectural coatings). In the 1950's almost all architectural coatings were solvent-borne. Solvent, rather than water, carried the pigments, resins, and additives which made up the coatings. As a result of technological advances, special resins were developed by resin suppliers, which enabled paint manufacturers to develop many architectural coatings which were water-borne. However, for certain specialized and more demanding applications, many professional painters and some homeowners continue to prefer solvent-borne coatings. Both the old and the new types of coatings contain volatile organic compounds (VOC). The traditional solvent-borne coatings typically contain two or more times the amount of VOC as the same volume of the new water-borne coatings. Solvent-borne coatings usually contain 400 or more grams of VOC per liter; water-borne products generally contain less than 250 grams of VOC per liter. VOC contribute to ozone production, and control of their use facilitates ozone control or emission reduction.
In 1986, the Technical Review Group (TRG), formed jointly by the state Air Resources Board (ARB) and the California Air Pollution Control Officers Association (CAPCOA), created an architectural coatings committee to develop a new suggested control measure for architectural coatings. The committee included representatives of ARB, various local districts, and the United States Environmental Protection Agency (EPA). On May 24, 1989, the TRG approved a final version of the ARB-CAPCOA suggested control measure for architectural coatings. The new suggested control measure was sent to local districts with a recommendation that the suggested control measure form the basis for local regulations for reducing emissions from the use of architectural coatings.
The District conducted a workshop on architectural coatings amendments on September 29, 1989. Thereafter, public hearings were conducted on December 6, 1989 and January 17, 1990, to consider proposed amendments *650 to regulation 8, rules 3 and 48. These amendments were designed to parallel the ARB-CAPCOA suggested control measure for architectural coatings. The District adopted the architectural coatings amendments which are the subject of this appeal on January 17, 1990.
On March 2, 1990, plaintiffs filed a petition for writ of mandate in the Superior Court of Los Angeles County against two statewide public agencies and six regional or local air pollution control agencies, including the District, which had developed, adopted, implemented or otherwise promoted regulations in California which limited the amount of solvent contained in architectural coatings. The petition specifically challenged the District's adoption of amendments to regulation 8. The petition's second cause of action alleged the District adopted its architectural coatings rules in violation of the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21000 et seq.)[2]
On or about March 28, 1990,[3] the District moved to transfer all causes of action against it to San Francisco. That motion was granted on or about April 18, 1990, only as to the CEQA claim and denied as to all other causes of action. On May 14, 1990, the District petitioned for a writ of mandate in the Court of Appeal seeking reversal of the order on all causes of action not transferred to San Francisco. The District also requested a stay of all further proceedings against the District. In December 1990, the Court of Appeal issued its order staying all proceedings. On January 8, 1991, the Court of Appeal denied the District's petition to transfer the remaining causes of action to San Francisco, but upheld the transfer of the second cause of action to San Francisco. (See Colusa Air Pollution Control Dist. v. Superior Court (1991) 226 Cal. App.3d 880 [277 Cal. Rptr. 110].)
On February 1, 1991, plaintiffs filed a motion for an order approving the stipulation between the parties to transfer the second cause of action to San Francisco County. The order was signed by the Los Angeles Superior Court on March 4, 1991. The transfer documents were received and filed in San Francisco Superior Court on April 2, 1991.
On July 8, 1991, the District filed a motion to dismiss plaintiffs' CEQA cause of action. The District argued plaintiffs had failed to request a hearing *651 within 90 days of filing their petition in violation of section 21167.4. The motion was denied by the superior court and this court subsequently denied the District's petition for writ of mandate.
A trial on plaintiffs' petition for writ of mandate was conducted on August 16, 1991. The trial court concluded, among other things, the District's amendments to regulation 8 comprised a project subject to CEQA, the amendments were not categorically exempt from CEQA, the administrative record contained substantial evidence on the basis of which a fair argument was made that the amendments may have a significant adverse effect on air quality, no actions or inactions of any person in connection with the January 17, 1990, adoption of the amendments estopped plaintiffs from asserting their cause of action under CEQA, and the issuance of a writ would not interfere with the federal court order in Citizens for a Better Environment v. Deukmejian (N.D.Cal. 1990) 731 F. Supp. 1448 and 746 F. Supp. 976. After the District's motion for reconsideration and plaintiffs' motion to modify the effective date of the writ of mandate were denied, these appeals followed.

DISCUSSION

Section 21167.4
(1a) A threshold issue is whether plaintiffs' action is barred by their failure to request a hearing within 90 days of filing the petition for writ of mandate. According to the record before us, plaintiffs filed their original petition in Los Angeles on March 2, 1990, the CEQA cause of action was transferred and filed in San Francisco Superior Court on April 2, 1991, and the District filed its motion to dismiss the action on July 8, 1991.[4]
Section 21167.4 provides: "In a writ of mandate proceeding alleging noncompliance with [CEQA], the petitioner shall request a hearing within 90 days of filing the petition or otherwise be subject to dismissal on the court's own motion or on the motion of any party interested therein." (2a) Pursuant to this statute, dismissal of a CEQA claim is mandatory when a petitioner fails to request a hearing on the writ within the designated time and a party moves to dismiss. (San Franciscans for Reasonable Growth v. City and County of San Francisco (1987) 189 Cal. App.3d 498, 504 [234 Cal. Rptr. 527].) However, there is no authority as to when a request must be filed in the event there is a change of venue.
(1b) In their opposition to the District's motion to dismiss the CEQA claim for failure to file a request for a hearing, plaintiffs took the position *652 that the Los Angeles Superior Court lost jurisdiction over any proceedings on March 28, 1990. (See Moore v. Powell (1977) 70 Cal. App.3d 583, 587 [138 Cal. Rptr. 914].) With respect to the transfer of the case to San Francisco, plaintiffs argued that although the action was filed in superior court on April 2, 1991, no notice was given either by the transferring court (Los Angeles) or the filing court (San Francisco) pursuant to Code of Civil Procedure section 399. Plaintiffs contended the 90-day period for filing a request for a hearing did not commence until the required statutory notices had been given.
Code of Civil Procedure section 399 provides in pertinent part: "At the time of transmittal of the papers and pleadings, the clerk shall mail notice to all parties who have appeared in the action or special proceeding, stating the date on which such transmittal occurred. Promptly upon receipt of such papers and pleadings, the clerk of the court to which the action or proceeding is transferred shall mail notice to all parties who have appeared in the action or special proceeding, stating the date of the filing of the case and number assigned to the case in such court." Thus, the transferring court and the receiving court are required to notify the parties the proceeding has been transferred and filed in a new jurisdiction.
(2b) Although section 21167.4 was intended to avoid delays in litigation (see San Franciscans for Reasonable Growth v. City and County of San Francisco, supra, 189 Cal. App.3d at p. 503), the rule must be relaxed where there is uncertainty concerning the forum in which the case is to be tried. (1c) We agree with plaintiffs that where the plaintiff initiates the filing of an original petition, the plaintiff knows with certainty the date of filing and can perform his duty under section 21167.4 to notice a hearing. However, with a transferred case, because the court initiates the filing, only after a plaintiff receives notice of the event of filing is it required to fulfill its duty to request a hearing. Notice, as is required under Code of Civil Procedure section 399, is the condition precedent to the duty.
Our view to permit a review of the CEQA claim on the merits is consistent with this district's opinion in McCormick v. Board of Supervisors (1988) 198 Cal. App.3d 352 [243 Cal. Rptr. 617]. In that case, the petitioners did not fully comply with section 21167.4 requirements. Nevertheless, the McCormick court held the dismissal of petitioners' action could be set aside because of a mistake of law or excusable neglect pursuant to Code of Civil Procedure section 473. (McCormick, supra, at pp. 359-363.) In this case, as in McCormick, there is no case law precisely on point; even if we determined plaintiffs were obligated to request a hearing within 90 days after the case was filed in *653 San Francisco Superior Court, their failure to do so could be considered a mistake of law. Thus, they would have been entitled to relief under Code of Civil Procedure section 473.

Categorical Exemption
CEQA was enacted to ensure that long-term protection of the environment is the guiding criterion in public decisions. (§ 21001, subd. (d).) The "heart" of CEQA is the preparation of an environmental impact report (EIR). (No Oil, Inc. v. City of Los Angeles (1974) 13 Cal.3d 68, 84 [118 Cal. Rptr. 34, 529 P.2d 66].) Consequently, all local agencies must prepare and certify an EIR on any project[5] which may have a significant effect on the environment. (§ 21151.) "To this end, CEQA establishes precise procedures governing the preparation of the report." (Sundstrom v. County of Mendocino (1988) 202 Cal. App.3d 296, 304 [248 Cal. Rptr. 352].)
Section 21084, subdivision (a) requires the Secretary of the Resources Agency to prepare and adopt "a list of classes of projects which have been determined not to have a significant effect on the environment and which shall be exempt" from CEQA. Pursuant to this authority, the secretary has created 29 classes of "categorical exemptions," which are set forth in the CEQA guidelines. (Cal. Code Regs., tit. 14, §§ 15300-15329.)[6] (3a) The District's principle contention on appeal is that its adoption of regulations tightening emission standards for VOC is categorically exempt from CEQA requirements pursuant to Guidelines sections 15307 and 15308.[7]
*654 (4) Before addressing the District's contention, it is necessary to discuss the appropriate standard of review.[8] The standard of review the court applies in reviewing an agency's decision to invoke an exemption is not entirely certain. (See Remy et al., Guide to the California Environmental Quality Act (6th ed. 1992) pp. 57-58, and cases cited therein.)
No Oil, Inc. v. City of Los Angeles, supra, 13 Cal.3d at page 74, states in footnote 3: "Judicial review of agency action under CEQA is governed by sections 21168 and 21168.5. Section 21168 provides that review of an agency decision `made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency' should follow the administrative mandamus procedure of Code of Civil Procedure section 1094.5. Section 21168.5, ... provides that other agency decisions should be reviewed by a traditional mandamus action."[9] Thereafter, in footnote 6, the court states: "In an action for administrative mandamus, the court reviews the administrative record, receiving additional evidence only if that evidence was unavailable at the time of the administrative hearing, or improperly excluded from the record. [Citation.] In a traditional mandamus action, on the other hand, the court is not limited to review of the administrative record, but may receive additional evidence. [Citations.]" (No Oil, Inc., supra, at p. 79, fn. 6.)[10]
In reviewing administrative decisions such as the scope or validity of a regulation, superior and appellate courts apply the same standard. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1989) ¶ 8:128.5, p. 8-40.) The correct standard of review is stated in Friends of "B" Street v. City of Hayward (1980) 106 Cal. App.3d 988 [165 Cal. Rptr. 514]. In that case, the court was called upon to determine the standard of review for a negative declaration. (See Guidelines, §§ 15070-15075.) The court stated: "[I]f a local agency is required to secure preparation of an EIR *655 `whenever it can be fairly argued on the basis of substantial evidence that the project may have significant environmental impact' [citation], then an agency's adoption of a negative declaration is not to be upheld merely because substantial evidence was presented that the project would not have such impact. The trial court's function is to determine whether substantial evidence supported the agency's conclusion as to whether the prescribed `fair argument' could be made. If there was substantial evidence that the proposed project might have a significant environmental impact, evidence to the contrary is not sufficient to support a decision to dispense with preparation of an EIR and adopt a negative declaration, because it could be `fairly argued' that the project might have a significant environmental impact. Stated another way, if the trial court perceives substantial evidence that the project might have such an impact, but the agency failed to secure preparation of the required EIR, the agency's action is to be set aside because the agency abused its discretion by failing to proceed `in a manner required by law.' [Citation.]" (Friends of "B" Street, supra, at p. 1002, italics in original.)[11] It is an agency's failure to assess evidence to determine whether it could be fairly argued that a project would have an adverse impact on the environment that constitutes the abuse of discretion. (Friends of "B" Street, supra, at p. 1002.)
The view expressed in Friends of "B" Street is consistent with the standard of review for any administrative regulation. (5) "Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations.... Although in determining whether the regulations are reasonably necessary to effectuate the statutory purpose we will not intervene in the absence of an arbitrary or capricious decision, we need not make such a determination if the regulations transgress statutory power." (California Assn. of Psychology Providers v. Rank (1990) 51 Cal.3d 1, 11-12 [270 Cal. Rptr. 796, 793 P.2d 2], quotations and citations omitted.) This standard is equally applicable for review of an agency's determination of CEQA's categorical exemptions.
In the present case, the District was adopting new regulations tightening emission standards for VOC, clearly a quasi-legislative function. Accordingly, the trial court, as well as this court, reviews the record pursuant to the Friends of "B" Street standard.
*656 (3b) Preliminarily, we note it is unclear whether the District complied with certain procedural responsibilities set forth in the Guidelines. Guidelines section 15020 provides in part: "Each public agency is responsible for complying with CEQA and these Guidelines. A public agency must meet its own responsibilities under CEQA and shall not rely on comments from other public agencies...." Thereafter, Guidelines section 15061, subdivision (a) states: "As part of the preliminary review, a public agency shall determine whether a particular activity is exempt from CEQA." The administrative record contains no indication that the District ever considered the exemption issue. At most, it merely includes an ARB staff response to Environmental Legislative and Regulatory Advocacy Program (ELRAP) questions on the architectural coatings suggested control measures. Even if we assume the District conducted the requisite preliminary review, it is clear it did not follow the law.
Projects which are categorically exempt from CEQA are those projects which have been determined not to have a significant effect on the environment. (§ 21084.) Consequently, Guidelines section 15300.2, subdivision (c) states: "A categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." Stated another way, a project is only exempt from CEQA "[w]here it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment." (Guidelines, § 15061, subd. (b)(3).) Thus, here, as in Friends of "B" Street, if the court perceives there was substantial evidence that the project might have an adverse impact, but the agency failed to secure preparation of an EIR, the agency's action must be set aside because the agency abused its discretion by failing to follow the law.
In Wildlife Alive v. Chickering (1976) 18 Cal.3d 190 [132 Cal. Rptr. 377, 553 P.2d 537], the plaintiffs filed a petition for writ of mandate requiring the Fish and Game Commission to suspend its promulgated hunting season and to revoke hunting permits for black bear. The plaintiffs contended that prior to setting the hunting season, the commission had failed to prepare an EIR. The defendants claimed the commission was categorically exempt from CEQA pursuant to Guidelines former section 15107, the predecessor regulation to Guidelines section 15307. The Supreme Court disagreed. "The secretary is empowered to exempt only those activities which do not have a significant effect on the environment. (Pub. Resources Code, § 21084.) It follows that where there is any reasonable possibility that a project or activity may have a significant effect on the environment, an exemption would be improper." (Wildlife Alive, supra, at pp. 205-206.) The court *657 concluded the setting of hunting and fishing regulations had the potential for a significant environmental impact, which was both favorable and unfavorable. "When the impact may be either adverse or beneficial, it is particularly appropriate to apply CEQA which is carefully conceived for the purpose of increasing the likelihood that the environmental effects will be beneficial rather than adverse." (Id., at p. 206.)
In International Longshoremen's & Warehousemen's Union v. Board of Supervisors (1981) 116 Cal. App.3d 265 [171 Cal. Rptr. 875], the board of supervisors, acting as the governing board of the county air pollution control district, amended certain rules to raise the allowable levels of nitrogen oxide (NOx) emissions for certain facilities in the county. In adopting the rule change, the board determined that its action was categorically exempt from CEQA in that the action was taken for the protection of the environment and of natural resources. The Court of Appeal disagreed. Relying on Wildlife Alive v. Chickering, supra, it held that where there is a reasonable possibility that a project or activity may have a significant effect on the environment, an exemption is improper. Since there was a reasonable possibility that doubling the NOx emissions allowed into the air might have a significant effect on the environment, the court reversed the board's determination and ordered the board to conduct further proceedings in conformity with the requirements of CEQA. (International Longshoremen's, supra, at pp. 276-277.)
District contends International Longshoremen's Union v. Board of Supervisors, supra, is inapposite, since that case involved the relaxation of standards. It maintains the adopted amendments in this case constitute more stringent standards for VOC and cannot be said to have created an adverse change. The administrative hearing record contradicts the District's contention.
Plaintiffs presented evidence of several adverse impacts which would result from the amended regulations: 1) Because of the lower quality of products under the amended regulations, users must apply more primers, sealers and undercoats to insure proper adhesion. 2) Because the solvent-borne coatings are difficult to handle and apply, users add solvent thinners to factory-prepared coatings. 3) Due to the fact that some newly mandated products produce a thicker film, more product is required to cover the same area. 4) It is necessary to apply more coats of the new products than of the old, because the new products do not hide as well as the traditional products. 5) Many coating applications have to be redone due to the low quality of the new products. 6) Since the new products have impaired durability, painting applications deteriorate sooner and have to be redone more frequently. In *658 sum, there is evidence that the new regulations require lower quality products. As a result, more product will be used, which will lead to a net increase in VOC emissions.
The only evidence in rebuttal to that presented by plaintiffs is an ARB staff response to ELRAP questions on the architectural coatings suggested control measures. That document concludes: "[T]he staff disagrees with the assertion that implementation of the SCM will result in an emissions increase due to increased thinning, more frequent recoating and increased incidence of job failures. Thus, the staff disagrees with the contention in the ELRAP Bulletin that implementation will have adverse environmental impacts." This conclusion is based on the fact there was no supporting data for plaintiffs' claims. Thus, rejection of plaintiffs' claims is predicated on lack of the very information which would be provided by an EIR. Since the staff likewise was unable to produce evidence of no adverse impact, the District cannot say with certainty "there is no possibility that the activity in question may have a significant effect on the environment." (Guidelines, § 15061, subd. (b)(3).) The District's failure to follow the pertinent CEQA Guidelines constitutes a prejudicial abuse of discretion under section 21168.5.

Health and Safety Code
In 1983, the Legislature enacted Health and Safety Code section 39666, which requires the ARB and air districts to adopt air toxic control measures. In 1986, the Legislature added chapter 6.5, titled "Regulations of Air Pollution Control and Air Quality Management Boards," to part 3 of division 26 of the Health and Safety Code. (Health & Saf. Code, § 40725 et seq.) This legislation sets forth a comprehensive scheme for meeting the California air quality standards. In 1990, the Legislature added Health and Safety Code section 40703, which requires a district, in adopting any regulation, to consider and make public its findings related to the cost-effectiveness of a control measure. (6a) The District maintains that when enacting these statutes, the Legislature did not intend they be subject to CEQA. We disagree.
(7) Preliminarily, we note courts are not at liberty to impute a particular intention to the Legislature when nothing in the language of the statute implies such intention. (Rushing v. Powell (1976) 61 Cal. App.3d 597, 604 [130 Cal. Rptr. 110].) (8) Repeals by implication are not favored and are recognized only when potentially conflicting statutes cannot be harmonized. (Nickelsberg v. Workers' Comp. Appeals Bd. (1991) 54 Cal.3d 288, 298 [132 Cal. Rptr. 377, 553 P.2d 537].)
*659 (6b) In Wildlife Alive v. Chickering, the Supreme Court was called upon to determine whether the Fish and Game Commission, which is governed by Fish and Game Code section 200 et seq., was subject to CEQA. The high court commenced its analysis with the observation that the provisions of CEQA are made expressly applicable to all state agencies. (Wildlife Alive v. Chickering, supra, 18 Cal.3d at p. 195.) It concluded that an express exemption created in section 21080.5 for certain agencies which follow specified abbreviated procedures implies a rejection of other exemptions not expressly granted in CEQA. (Wildlife Alive, supra, at p. 196.) Since the Legislature is presumed to be aware of the existence of all relevant statutes and the court's construction of those statutes (see Nickelsberg v. Workers' Comp. Appeals Bd., supra, 54 Cal.3d at p. 298; People v. Bouzas (1991) 53 Cal.3d 467, 475 [279 Cal. Rptr. 847, 807 P.2d 1076]), the lawmakers' failure to amend CEQA can only indicate their intention not to create the exclusion which the District suggests.

Estoppel
(9) Citing section 21177, subdivision (b),[12] the District contends plaintiffs are estopped from asserting a CEQA claim. The contention is based on the fact that Robert E. Wendoll, an employee of the lead plaintiff and a spokesperson for ELRAP, testified in support of the amendments which are the basis of the CEQA claim. There is no merit to the contention.
Paragraph 120 of plaintiffs' petition alleges that written demands were made on December 5, 1989, and January 17, 1990, that the District prepare an environmental impact report before passing upon the regulation 8 amendments. The District admitted the allegation in its answer and is bound by the admission in the pleading. (Los Angeles County-U.S.C. Medical Center v. Superior Court (1984) 155 Cal. App.3d 454, 460 [202 Cal. Rptr. 222].)

Federal Law
(10) District asserts the application of CEQA to its rule adoptions conflicts with federal law requiring a reduction of VOC emissions to attain ozone standards. The assertion is based on the fact that under the federal Clean Air Act (42 U.S.C. § 7401 et seq.) the EPA must set limits on the atmospheric concentrations that can be tolerated for pollutants that may endanger public health and welfare. These limits, termed national ambient air quality standards (standards), represent the minimum standards deemed *660 necessary to protect the public health and welfare. (Citizens for a Better Environment v. Deukmejian, supra, 731 F. Supp. at p. 1451.) Once the standards were established, each state was required to develop a state implementation plan for achieving and attaining the standards. (Id., at pp. 1451-1452.) EPA approved a state implementation plan for California in 1983; nevertheless, that portion of the state plan applicable to the San Francisco Bay region still has not been achieved. (Id., at p. 1452.)
In 1989, various environmental organizations brought suit against the District and other governmental agencies to enforce provisions of the state implementation plan and to fully comply with the 1982 Bay Area air quality plan. The federal district court found the District liable for failing to implement certain portions of the 1982 plan, and imposed timetables for corrective action. (Citizens for a Better Environment v. Deukmejian, supra, 731 F. Supp. at pp. 1460-1461; Citizens for a Better Environment v. Deukmejian, supra, 746 F. Supp. 976.) The District contends CEQA review of its regulations was not contemplated or ordered by the federal court. It submits that any application of CEQA that would impede or interfere with attainment of ambient air standards is forbidden.
Plaintiffs dispute whether the amendments challenged in this case are covered by the federal court order. However, it is unnecessary to address this issue. The fact that the federal court did not intend to preempt CEQA is evidenced in another part of its order. That portion of the order which is addressed to the Metropolitan Transportation Commission provides in part: "Within 150 days of September 19, 1989, MTC shall, after public hearing, apply that criteria to projects in the Transportation Improvement Program and make a determination as to whether any projects should be delayed due to their significant adverse impact on air quality." (Citizens for a Better Environment v. Deukmejian, supra, 731 F. Supp. at pp. 1461-1462.) Clearly, the court did not intend the District to adopt regulations which could potentially have an adverse impact on the environment.

Effective Date of Judgment
In its judgment granting the writ of mandate, the trial court ordered the District to set aside the regulation 8 amendments as of January 1, 1992. On cross-appeal, plaintiffs contend the judgment should have been effective immediately. We need not address the propriety of the court's order, since the issue is now moot. (Preston v. Goldman (1986) 42 Cal.3d 108, 127 [227 Cal. Rptr. 817, 720 P.2d 476].)

*661 DISPOSITION
The judgment is affirmed. The parties to bear their own costs on appeal.
Chin, J. and Werdegar, J., concurred.
A petition for a rehearing was denied October 13, 1992, and the petition of appellant Bay Area Air Quality Management District for review by the Supreme Court was denied December 17, 1992. Kennard, J., was of the opinion that the petition should be granted.
NOTES
[1] Since the parties have failed to include critical documents in their joint appendix, this court has taken judicial notice of papers filed in Bay Area Air Quality Management Dist. v. Superior Court (Aug. 13, 1991) A054501 [nonpub. opn.] in setting forth the factual and procedural history of this case. (Evid. Code, §§ 459, 452, subd. (d)(1).)
[2] All further statutory references are to the Public Resources Code unless otherwise indicated.
[3] There are certain discrepancies as to exact dates in the record before this court. Plaintiffs' papers assert the District's motion to transfer was made on March 27 or March 28, 1990. The District's documents state the motion was made on April 2, 1990. These differences are irrelevant to this court's opinion.
[4] Although the request has not been included in the joint appendix, plaintiffs' opposition to the District's motion to dismiss indicates a request for hearing was filed on July 16, 1991.
[5] A "[p]roject" is any activity "directly undertaken by any public agency" or by a person or other public entity assisted or approved by a public agency (§ 21065); it is "the whole of an action, which has a potential for resulting in a physical change in the environment, directly or ultimately, ..." (Cal. Code Regs., tit. 14, § 15378, subd. (a); see also McQueen v. Board of Directors (1988) 202 Cal. App.3d 1136, 1143 [249 Cal. Rptr. 439].) Although the District disputed whether the regulation 8 amendments constituted a project in the trial court, it does not raise this issue on appeal.
[6] All further citations to title 14, California Code of Regulations will be referred to as "Guidelines" and the appropriate section.
[7] Guidelines section 15307 provides in pertinent part: "Class 7 consists of actions taken by regulatory agencies as authorized by state law or local ordinance to assure the maintenance, restoration, or enhancement of a natural resource where the regulatory process involves procedures for protection of the environment."

Guidelines section 15308 states in part: "Class 8 consists of actions taken by regulatory agencies, as authorized by state or local ordinance, to assure the maintenance, restoration, enhancement, or protection of the environment where the regulatory process involves procedures for protection of the environment."
[8] In its petition for writ of mandate plaintiffs relied on sections 21168, 21168.5 as well as Code of Civil Procedure sections 1085 and 1094.5 in seeking relief.
[9] Section 21168.5 states in its entirety: "In any action or proceeding, other than an action or proceeding under Section 21168, to attack, review, set aside, void or annul a determination, finding, or decision of a public agency on the grounds of noncompliance with [CEQA], the inquiry shall extend only to whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence."
[10] On the other hand, the high court apparently also has accepted the position that the standard of review is essentially the same under both sections 21168 and 21168.5, i.e., "whether substantial evidence supports the agency's determination." (Laurel Heights Improvement Assn. v. Regents of University of California (1988) 47 Cal.3d 376, 392, fn. 5 [253 Cal. Rptr. 426, 764 P.2d 278].)
[11] The views expressed in Friends of "B" Street have been incorporated into the Guidelines. Guidelines section 15064, subdivision (g)(1) provides: "If the lead agency finds there is substantial evidence in the record that the project may have a significant effect on the environment, the lead agency shall prepare an EIR [citation]. Said another way, if a lead agency is presented with a fair argument that a project may have a significant effect on the environment, the lead agency shall prepare an EIR even though it may also be presented with other substantial evidence that the project will not have a significant effect [citation]."
[12] Section 21177, subdivision (b) provides: "No person shall maintain an action or proceeding unless that person objected to the approval of the project orally or in writing."