[S.F. No. 23417. Aug. 24, 1976.]

WILDLIFE ALIVE et al., Plaintiffs and Appellants, v.
SHERMAN CHICKERING et al., Defendants and Respondents.

**COUNSEL**

Robert M. Berman, Bruce Tichinin and Tichinin & Mitchell for Plaintiffs and Appellants.

Ballard Jamieson, Jr., and John D. Leshy as Amici Curiae on behalf of Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Carl Boronkay and R. H. Connett, Assistant Attorney General, Raymond H. Williamson and Denis Smaage, Deputy Attorneys General, for Defendants and Respondents.

Luce, Forward, Hamilton & Scripps, Thomas M. Hamilton, William M. McKenzie, Jr., Louis E. Goebel, Steven S. Wall, Richard M. Freeman, Ronald A. Zumbrun, Raymond M. Momboisse and Elleene A. Kirkland as Amici Curiae on behalf of Defendants and Respondents.

Mary D. Nichols as Amicus Curiae.

**OPINION**

**RICHARDSON, J.**—This case raises the general question whether the California Environmental Quality Act of 1970 (CEQA) (Pub. Resources

Code, § 21000 et seq.) applies to the Fish and Game Commission (the commission). We will conclude that it does.

In 1974 the commission, in accordance with its normal procedures (Fish & G. Code, § 200 et seq.; Cal. Admin. Code, tit. 14, §§ 1.05-781), fixed the dates for the hunting of black bear and issued hunting permits for the 1974 season. Shortly before the season was to open, Wildlife Alive, The Endangered Species Committee of California, and certain individuals (plaintiffs) unsuccessfully petitioned the San Francisco Superior Court for a writ of mandate requiring the commission to suspend the season and revoke the permits. Plaintiffs appeal contending that prior to setting the hunting season the commission failed to exercise its mandatory duty under CEQA to prepare an environmental impact report (EIR), a report required on all proposed projects that "may have a significant effect on the environment." (Pub. Resources Code, § 21100.) Defendants' responding argument that the commission is exempt frames the central issue—does CEQA apply?

*Implied Exemption*

We commence our analysis by observing that CEQA contains no express exemption for the commission. On the contrary, its provisions are made expressly applicable to *all* state agencies. (Pub. Resources Code, §§ 21000, subd. (g), 21001, subds. (f), (g), 21082, 21106.) We note further that the Legislature has provided for a number of specific exemptions from CEQA (e.g., Pub. Resources Code, §§ 21085, 21172; Wat. Code, § 13389), none of which are expressly applicable to the commission. Under the familiar rule of construction, *expressio unius est exclusio alterius,* where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed. (*State Board of Education* v. *Levit* (1959) 52 Cal.2d 441, 461 [343 P.2d 8]; *Estate of Pardue* (1937) 22 Cal.App.2d 178, 181 [70 P.2d 678].) This rule, of course, is inapplicable where its operation would contradict a discernible and contrary legislative intent. (*In re Cathey* (1961) 55 Cal.2d 679, 689 [12 Cal.Rptr. 762, 361 P.2d 426].) As explained below, however, we conclude that application of this rule of construction is consistent with the legislative purpose in enacting CEQA.

In determining the Legislature's intent in this area, we find of special significance the recent adoption of Public Resources Code section

21080.5 (signed by the Governor on Sept. 30, 1975, and effective Jan. 1, 1976; Stats 1975, ch. 1187, pp. 2930-2932.) This amendment to CEQA creates an alternative to the EIR requirement for qualified state agencies having important environmental protection responsibilities. Agencies may satisfy their EIR obligation under this section by adopting and adhering to a regulatory program determined by the Secretary of the Resources Agency (the secretary) to include the following features: written plans of proposed projects with alternatives and mitigation measures available to minimize any significant environmental impact (Pub. Resources Code, § 21080.5, subd. (b)(3)(i)); consultation by the agency with other public officers and agencies (§ 21080.5, subd. (b)(2)(iii)); notice to the public and opportunity for public review and comment (§ 21080.5, subd. (b)(2)(vi)); written responses by the agency to "significant environmental points raised during the evaluation process" (§ 21080.5, subd. (b)(2)(iv)); and a requirement that a project be disapproved if there are feasible alternatives to the proposed action which "would substantially lessen any significant adverse impact" on the environment (§ 21080.5, subd. (b)(2)(i)). For a number of reasons the adoption of section 21080.5 reinforces our conclusion that the Legislature did not intend that the commission enjoy an exemption from the operation of CEQA.

First, under the doctrine of *expressio unius est exclusio alterius,* the creation of a limited express exemption suggests that a broader implied exemption could not have been intended. ■ " 'In the grants [of powers] and in the regulation of the mode of exercise, there is an implied negative; an implication that no other than the expressly granted power passes by the grant; that it is to be exercised only in the prescribed mode . . . .' " (*Martello* v. *Superior Court* (1927) 202 Cal. 400, 405 [261 P. 476], citation omitted; see also *Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 159 [118 Cal.Rptr. 14, 529 P.2d 46]; *State Board of Education* v. *Levit, supra,* 52 Cal.2d 441, at p. 461; *Gilgert* v. *Stockton Port District* (1936) 7 Cal.2d 384, 387 [60 P.2d 847]; *Wheeler* v. *Herbert* (1907) 152 Cal. 224, 237 [92 P. 353].) ■ Accordingly, the express exemption created in section 21080.5 for certain agencies which follow specified abbreviated procedures may fairly be said to imply a rejection of other exemptions not expressly granted in CEQA.

Second, the terms of section 21080.5 seem to apply specifically to the commission. The various duties of the commission include a number of

environmental responsibilities. For example, one of the agency's functions is to ". . . make such regulations in relation to mammals, or any species or subspecies thereof, as it deems necessary to preserve, properly utilize, or maintain the best relative number of each such species or subspecies." (Fish & G. Code, § 213.) If, as the commission urges, general exemptions from CEQA are already implied for those agencies having environmental responsibilities, then the new abbreviated alternative procedures would serve little purpose. The amendment makes no mention of extending CEQA to new areas, to which it would then apply. We must assume, therefore, that the Legislature intended to modify a preexisting duty, not to enact a statute that would have no or little effect.

Third, the requirements of CEQA as amended by section 21080.5 do not match the procedures mandated by the Fish and Game Code under which the commission functions. Of the five essential elements contained in the streamlined procedures of section 21080.5 above described, for example, only two are included in the Fish and Game Code, namely, public review and comment (Fish & G. Code, §§ 206, 211, 212, 213), and consultation with other public agencies (§§ 208, 211). There is no equivalent in the Fish and Game Code for written data, either in the form of an "abbreviated environmental review" or a response to. "significant environmental points raised during the evaluation process." (Pub. Resources Code, § 21080.5, subds. (b)(2)(iv), (b)(3)(i).) Nor does the Fish and Game Code require that the commission implement the alternative with the least "adverse effect" on the environment. (*Id.*, § 21080.5, subd. (b)(2)(i).)

CEQA and the Fish and Game Code not only lack coordination, but close scrutiny of their procedural differences reveals that these CEQA requirements serve very specific and important purposes. The EIR is most significant in this regard. One of its major functions, which is preserved in section 21080.5, is to ensure that all reasonable alternatives to proposed projects are thoroughly assessed by the responsible official. (Pub. Resources Code, §§ 21100, subds. (c), (d), 21080.5, subd. (b)(2); *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 263, fn. 8 [104 Cal.Rptr. 761, 502 P.2d 1049]; *People* v. *County of Kern* (1974) 39 Cal.App.3d 830, 841-842 [115 Cal.Rptr. 67]; *Environmental Defense Fund, Inc.* v. *Coastside County Water Dist.* (1972) 27 Cal.App.3d 695, 704-705 [104 Cal.Rptr. 197].) The Fish and Game Code provides no similar assurances that the commission will consider the options which are available to it in adopting its hunting regulations. The commission is

not required to analyze alternatives to the proposed length of the hunting season or proposed "bag limits," compare their impacts on the bear population, or assess their practical effect on the recreational values associated with hunting. Similarly, procedures of the Fish and Game Code do not require the commission to respond in any manner to suggestions from interested citizens.

Another important function of the EIR is to provide information on which the work of an agency can be evaluated by the public and by the courts. (See *County of Inyo* v. *Yorty* (1973) 32 Cal.App.3d 795, 810-811 [108 Cal.Rptr. 377]; *Environmental Defense Fund, Inc.* v. *Coastside County Water Dist., supra,* 27 Cal.App.3d 695, at p. 705.) Following issuance and filing of an EIR, judicial review may be invoked to determine whether or not the agency has abused its discretion. (Pub. Resources Code, § 21168.5.) CEQA renders easier the discovery of any such abuse by requiring the disclosure of certain specified environmental information, alternative proposals, and the reasons for accepting or rejecting recommendations or proposals made by the public. Again, no such requirement exists in the Fish and Game Code. While the commission must submit its minutes to the Legislature (Fish & G. Code, §§ 208, 211), there is no guarantee that the minutes will contain the necessary information for review.

The foregoing disparity between the respective demands of CEQA and the Fish and Game Code strongly suggests that the administrative procedures found in the Fish and Game Code were not intended as a substitute for compliance with CEQA. This conclusion is fortified by our prior decisions interpreting' CEQA. In analyzing the application of CEQA to an agency already charged by another act with environmental responsibilities, we recently recognized that these acts should be harmonized and CEQA applied. (*Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263 [119 Cal.Rptr. 215, 531 P.2d 783].) ■ Moreover, we have recognized the necessity of interpreting CEQA broadly so as to "afford the fullest possible protection to the environment within the reasonable scope of the statutory language." (*Friends of Mammoth* v. *Board of Supervisors, supra,* 8 Cal.3d 247, 259.)

■ Defendants argue that compliance with requirements of CEQA will actually retard the commission's work in protecting the environment through unnecessary duplication of tasks and needless diversion of the commission's resources. This alleged impracticality is viewed as indica-

tive of a legislative intent not to include the commission within the scope of the act.

We rejected a similar argument in *Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d 263, when upholding the application of CEQA to a local agency formation commission. We fully recognized that a certain administrative workload would be imposed upon the affected agency, but foresaw the defeat or frustration of the worthy purposes of CEQA if compliance was not required. (*Id.,* at pp. 282-285.) Similar considerations are equally applicable to the case before us. While there is every indication that the commission carries out its duties conscientiously, we can neither ignore the demands of CEQA nor assume that the commission operating under the Fish and Game Code meets the expressed goals of CEQA while disregarding its requirements.

Moreover, we are unconvinced that the additional requirements contained in CEQA necessarily will constitute an impractical or intolerable administrative burden for the commission. Compliance with the most demanding requirement, the EIR, may prove to be unnecessary. The commission may conclude after its initial study that the fixing of hunting and fishing seasons, though potentially having a significant environmental effect, may not in fact have such an effect. (Cal. Admin. Code, tit. 14, § 15083.) The public, of course, must be afforded the opportunity to convince the agency that its initial environmental assessment is wrong. (*Id.,* § 15083, subd. (c); see generally *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 79-81 [118 Cal.Rptr. 34, 529 P.2d 66].) The commission may then either change its determination or uphold it, a decision which will be subject to judicial review. (*Hixon* v. *County of Los Angeles* (1974) 38 Cal.App.3d 370 [113 Cal.Rptr. 433].)

Alternatively, as noted above, the commission may qualify for the limited exemption available under Public Resources Code section 21080.5, allowing it to satisfy CEQA by compliance with more abbreviated procedures.

Furthermore, even if a full EIR is required under the act, as amici note, much of the work necessary for the preparation of an EIR is already required by procedures under the Fish and Game Code. (See, e.g., Fish & G. Code, § 1000.) Indeed, if this work has not been performed, there is little force in defendants' argument that the commission substantially complies with CEQA through its adherence to the Fish and Game Code.

Defendants insist that regardless of the overlap in study and research requirements, the time demands of CEQA relating to the EIR, conflict with the time restraints imposed by the Fish and Game Code. Such a conflict, they contend, indicates a legislative intent to exclude the commission from application of the act. We cannot accept the contention.

Section 15160, subdivision (c), of title 14 of the California Administrative Code, which forms the basis for defendants' argument, provides that periods for public review of draft EIRs should be no less than 30 days. Under the Fish and Game Code, a calendar extending over a period of 50 to 70 days, is to be established by the commission, within which meetings are held to receive recommendations from the public, announce regulations, consider objections, and issue final regulations. (Fish & G. Code, §§ 206, 207, 211, 212, 213.)

No discernible reason appears why the guidelines promulgated pursuant to CEQA cannot fit conveniently within the foregoing time framework. The commission may, indeed should, prepare well in advance of the first meeting a draft EIR complete except for its responses to public comments and objections. (See Cal. Admin. Code, tit. 14, § 15013; *Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d 263, at p. 282.) It then need only respond to those comments which raise "significant environmental issues." (*People* v. *County of Kern, supra,* 39 Cal.App.3d 830, at p. 841; Cal. Admin. Code, tit. 14, § 15146, subd. (b).) This response may be in the form of either a revised EIR, or an attachment to the draft EIR. Responses need not be detailed except when the commission adopts a regulation at variance with particular recommendations which raise "major issues." (*Id.*) The commission may begin to prepare its responses, whenever necessary, immediately after the first meeting. The time framework established in the Fish and Game Code then permits the commission both to schedule a second meeting 30 days after the first meeting, within which the public may review the draft EIR, and to reserve a 30-day period within which it can respond to any recommendations made during this second meeting.

Once the EIR is prepared, it need not be prepared anew but may be updated each year. CEQA provides that new reports are not necessary unless substantial changes occur in the environmental conditions affected by the regulations. (Pub. Resources Code, § 21166; Cal. Admin. Code, tit. 14, § 15068.) It would also appear that the commission need not

necessarily prepare separate reports for each species affected by its regulations. Upon a finding that the environmental effects of its hunting regulations are similar enough to warrant the same treatment and that a single EIR will cover the impacts of its regulations relating to each species, it may consolidate its findings in one report. (*Id.,* § 15068.) We conclude that sufficient administrative flexibility is authorized to permit commission compliance with CEQA.

 The National Environmental Policy Act (NEPA) (42 U.S.C. § 4321 et seq.) constitutes, in substantial effect, a national counterpart to CEQA. A series of federal cases recognize the creation of an implied exemption from NEPA's EIR requirement in some situations in which a particular agency's regulations furnish a "functional equivalent" of this requirement. (See, e.g., *Indiana & Mich. Elec. Co.* v. *Environmental Pro. Agcy.* (7th Cir. 1975) 509 F.2d 839; *Amoco Oil Co.* v. *Environmental Protection Agency* (D.C.Cir. 1974) 501 F.2d 722 [163 App.D.C. 162]; *Environmental Def. F., Inc.* v. *Environmental Pro. Agcy.* (D.C.Cir. 1973) 489 F.2d 1247 [160 App.D.C. 123]; *Portland Cement Association* v. *Ruckelshaus* (D.C.Cir. 1973) 486 F.2d 375 [158 App.D.C. 308], cert. den.; 417 U.S. 921 [41 L.Ed.2d 226, 94 S.Ct. 2628]; *Buckeye Power, Inc.* v. *Environmental Protection Agcy.* (6th Cir. 1973) 481 F.2d 162; *Duquesne Light Co.* v. *Environmental Protection Agcy.* (3d Cir. 1973) 481 F.2d 1; *International Harvester Company* v. *Ruckelshaus* (D.C.Cir. 1973) 478 F.2d 615 [155 App.D.C. 411]; *Appalachian Power Co.* v. *Environmental Pro. Agcy.* (4th Cir. 1973) 477 F.2d 495; *Getty Oil Company (Eastern Operations)* v. *Ruckelshaus* (3d Cir. 1972) 467 F.2d 349, cert. den., 409 U.S. 1125 [35 L.Ed.2d 256, 93 S.Ct. 937].) Defendants, stressing certain similarities between CEQA and the Fish and Game Code, urge adoption of a similar "functional equivalence test" in the matter before us.

We have previously relied upon federal cases construing NEPA in determining the scope of application of parallel provisions of CEQA (e.g., *Friends of Mammoth* v. *Board of Supervisors, supra,* 8 Cal.3d 247, at pp. 260-261). Recognizing that the California act was modeled on the federal statute, we have consistently treated judicial and administrative interpretation of the latter enactment as persuasive authority in interpreting CEQA. (*No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d 68, at p. 86, fn. 21; *Environmental Defense Fund, Inc.* v. *Coastside County Water Dist., supra,* 27 Cal.App.3d 695, at p. 701.) However, for the reasons discussed below, we decline to apply the "functional equivalence test."

First, the foregoing federal cases recognize an exemption only if the agency in question was primarily created for the protection of the environment. (See *Duquesne Light Co.* v. *Environmental Protection Agcy., supra,* 481 F.2d 1, at p. 9; *International Harvester Company* v. *Ruckelshaus, supra,* 478 F.2d 615, at p. 650, fn. 130.) To date, the federal "functional equivalence" exemption has been judicially applied only to the Environmental Protection Agency (EPA). Interestingly, although the matter apparently has never been litigated, the federal agency, analogous to the commission, namely, the United States Fish and Wildlife Service, has assumed it must comply with NEPA. (See *Fund for Animals* v. *Frizzell* (D.D.C. 1975) 402 F.Supp. 35, 37.)

In addition, the federal cases also require a statement which constitutes a "functional equivalent" of an environmental impact report, and which at the least contains ". . . a statement of reasons that sets forth the environmental considerations, pro and con which have been taken into account . . . ." (*Portland Cement Association* v. *Ruckelshaus, supra,* 486 F.2d 375, at pp. 384-385.) Since no such statement is required by the Fish and Game Code (and none was prepared in the present case), it seems highly unlikely that the commission's activity would be exempt under any federal substantial compliance test.

■ Finally, a more compelling reason leads us to reject the functional equivalence test in California. ■ Federal judicial interpretations of NEPA are relevant to our consideration only to the extent that the provisions of NEPA may be fairly said to parallel CEQA. ■ The significant addition to CEQA previously discussed, section 21080.5, has no federal analogue. This section, by providing an alternative to the EIR requirement of CEQA for agencies with environmental responsibilities, is in effect a statutory version of the judicially created federal functional equivalence doctrine. Thus, insofar as CEQA may provide an exemption for agencies with environmental responsibilities, section 21080.5 rather than federal precedent must define the scope of this exemption.

■ For the foregoing reasons, we conclude that no implied exemption absolves the commission from full compliance with CEQA.

*Constitutionality*

■ It has been argued that application of CEQA to the commission would violate the state Constitution. In 1940, the commission, which

theretofore had been a statutory agency of the state Legislature, was made the subject of a constitutional amendment. This amendment, now article IV, section 20, of the California Constitution, provides in part: "(b) . . . The Legislature may delegate to the [Fish and Game] commission such powers relating to the protection and propagation of fish and game as the Legislature sees fit." It is urged that this constitutional provision makes the commission an "arm of the Legislature" and thus exempt from CEQA under section 21063 of the Public Resources Code, which specifically exempts the Legislature itself from CEQA. Support for this argument is sought from a provision of the Fish and Game Code which states that if the delegation exercised by the Legislature under article IV, section 20, ceases to have effect, any regulation already issued by the commission shall have the same force and effect as if enacted by the Legislature. (Fish & G. Code, § 250.)

We do not read either of the above constitutional or statutory provisions as equating the commission with the Legislature. While certain powers of the commission may have constitutional origins, and acknowledging that the commission's regulations may be valid even when the Legislature improperly delegates authority to it, the commission nevertheless remains a state agency. It is neither, by virtue of the foregoing, transformed into the Legislature itself nor does it become any integral part thereof.

█ Amici, arguing on behalf of the commission, raise a further constitutional issue. They contend that article IV, section 20, precludes the Legislature from delegating ". . . powers relating to the protection and propagation of fish and game . . ." to any agency other than the commission. They maintain that the express grant of these powers to the commission implies, under the *expressio* doctrine discussed above, that delegation to other agencies, such as the Resources Agency, is prohibited. (See 17 Ops.Cal.Atty.Gen. 72 (1951).)

We examined and rejected this precise argument 25 years ago in *Dean v. Kuchel* (1951) 37 Cal.2d 97 [230 P.2d 811]. Moreover, even assuming for purposes of discussion, that article IV, section 20, prohibited a delegation to another agency of powers relating to fish and game matters, the application of CEQA to the commission does not constitute an improper delegation. Our examination of the statutory framework of CEQA, discloses that while it imposes additional duties on public agencies, boards, and commissions, it does not delegate powers of the

type contemplated in article IV, section 20. Under CEQA, state agencies themselves have the responsibility for adopting objectives, criteria, and procedures for the evaluation of projects and the preparation of EIRs consistent with the act and the guidelines adopted by the Secretary of the Resources Agency. CEQA imposes additional procedural requirements which must be met before rules and regulations are established or projects initiated by state agencies (e.g., Pub. Resources Code, §§ 21082, 21100, 21105, 21108, 21161, 21167-21168.5). However, it does not directly shift power initially vested in the commission to another agency or affect the commission's substantive "powers relating to the protection and propagation of fish and game." The secretary is empowered by CEQA to adopt guidelines for public agencies to follow, but these guidelines must be consistent with CEQA's express statutory requirements. (Pub. Resources Code, § 21083.) Although the secretary may categorically exempt certain projects from the operation of CEQA (Pub. Resources Code, § 21084) and certify regulatory programs for the abbreviated procedures available under section 21080.5, his role is principally that of a source of information to the agency and the recipient of its reports. No power is conferred on the secretary to prevent, delay, or revise the commission's projects or decisions.

We conclude, accordingly, that it cannot fairly be said that CEQA constitutes a delegation of powers inconsistent with the constitutional grant of powers to the commission.

*Categorical Exemption*

 Amicus curiae Pacific Legal Foundation argues that the commission's activity in setting hunting and fishing seasons is included within one of the categorical exemptions provided in sections 21083 and 21084 of CEQA. These sections direct the Office of Planning and Research to develop and the secretary to adopt guidelines for determining whether or not a proposed project may have a significant effect on the environment. If it is concluded that the project has no such effect then it is categorically exempt from CEQA.

Among the projects which have been designated as categorically exempt pursuant to these provisions are ". . . actions taken by regulatory agencies . . . to assure the maintenance, restoration, or enhancement of a natural resource where the regulatory process involves procedures for protection of the environment." (Cal. Admin. Code, tit. 14, § 15107.) The

section describes as an example ". . . the wildlife preservation activities of the State Department of Fish and Game." Amicus asserts that this express exemption includes the setting of hunting and fishing seasons by the commission.

We note first that the commission is not, of course, the Department of Fish and Game (the department). ■ The commission is a constitutionally created agency with general regulatory powers over the taking or possession of birds, mammals, fish, amphibia and reptiles. (Cal. Const., art. IV, § 20; Fish & G. Code, §§ 101, 200.) The department, in contrast, is a statutorily created agency whose director is responsible to the commission in enforcing the policies and provisions of the Fish and Game Code. (Fish & G. Code, §§ 700-703.)

■ More significantly, several sections granting powers and duties to the department contemplate projects specifically designed for the preservation of wildlife. The code mandates the acquisition by the department of land "[f]or purposes of propagating, feeding and protecting birds, mammals, and fish" (§ 1525) and ecological reserves (§ 1580). Other sections provide for the establishment of rearing facilities for salmon and steelhead (§ 1200), wildlife feeding programs (§§ 1502, 1503), and other projects specifically aimed at the conservation and propagation of wildlife (see, e.g., § 1870 et seq.).

The "wildlife preservation activities of the State Department of Fish and Game" described in section 15107, in our view, more accurately refer to the foregoing types of departmental functions than the commission activities at issue in this litigation. The fixing of hunting seasons, while doubtless having an indirect beneficial effect on the continuing survival of certain species, cannot fairly or readily be characterized as a *preservation activity* in a strict sense.

Another consideration moves us to our conclusion that the commission is not categorically exempt from CEQA. Even if section 15107 was intended to cover the commission's hunting program, it is doubtful that such a categorical exemption is authorized under the statute. ■ We have held that no regulation is valid if its issuance exceeds the scope of the enabling statute. (See Gov. Code, § 11374; *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 133, 155 A.L.R. 405].) The secretary is empowered to exempt only those activities which do not have a significant effect on the environment. (Pub. Resources

Code, § 21084.) It follows that where there is any reasonable possibility that a project or activity may have a significant effect on the environment, an exemption would be improper. No party herein has suggested that the setting of hunting and fishing seasons may not have a significant effect on the environment. ▆ Rather, amicus Pacific Legal Foundation argues that the categorical exemption is available as long as a project does not have a significant *adverse* impact on the environment. The argument, however, is not consistent with the statutory pattern. The terms of section 21083 establishing the categorical exemptions do not limit application of the section to projects having a significant adverse effect. While two of the sections's criteria for determining whether a project has a significant effect on the environment refer to adverse environmental effects (§ 21083, subds. (a), (c)), the remainder of the section, including a third criterion (§ 21083, subd. (b)), contains no such limitation.

▆ We conclude that the setting of hunting and fishing seasons has the potential for a significant environmental impact, both favorable and unfavorable. There inheres in the fixing of hunting seasons and the issuance of hunting permits a serious risk of overkill and depletion of the affected species. When the impact may be either adverse or beneficial, it is particularly appropriate to apply CEQA which is carefully conceived for the purpose of increasing the likelihood that the environmental effects will be beneficial rather than adverse. As previously indicated, we have consistently held that CEQA must be interpreted so as to afford the "fullest possible protection" to the environment. (*Bozung* v. *Local Agency Formation Com.*, *supra*, 13 Cal.3d 263, 274; *Friends of Mammoth* v. *Board of Supervisors*, *supra*, 8 Cal.3d 247, 259.) We will not abandon that principle by unreasonably expanding statutory and regulatory language to imply an exemption for the commission when it enacts hunting regulations. We cannot conclude that the Legislature so intended.

Both the express language and the apparent intent of CEQA require its application to the adoption of hunting regulations by the commission. We find no constitutional barriers to such a conclusion, and further determine that the commission is not rendered exempt under the act from CEQA's categorical exemption provisions.

Defendants have requested that we stay the effective date of this opinion for 90 days in order to permit them to apply for and obtain the

limited exemption from CEQA's EIR requirements, pursuant to section 21080.5 of the Public Resources Code, discussed above. Defendants also request additional stays in order to preserve the validity of existing hunting and fishing regulations not directly challenged in this proceeding. We believe that a 90-day stay is sufficient for defendant's purposes, for most of the regulations referred to by defendants will have become final, and protected from challenge under CEQA, by that time. (See Pub. Resources Code, § 21167.) Any regulations which are not final properly should be subject to any valid challenge under CEQA or upon any other basis. Accordingly, the effective date of this opinion shall be December 22, 1976.

Plaintiffs have asked us to direct the superior court to determine their motion for attorneys' fees for services performed in connection with the appeal in this action. Although the question whether attorneys' fees are recoverable in proceedings such as the present one is unresolved, we have in the past acknowledged that such motions should be addressed to the trial court, whose ruling thereon may thereafter be reviewed on appeal. (See *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 483 [119 Cal.Rptr. 215, 531 P.2d 783]; *No Oil, Inc.* v. *City of Los Angeles* (1975) 13 Cal.3d 486 [119 Cal.Rptr. 216, 531 P.2d 784].) Accordingly, we direct the trial court to hear and determine plaintiffs' motion for attorneys' fees, and if it concludes that plaintiffs are entitled to reasonable attorneys' fees for services performed on appeal to be assessed against defendants, to fix the amount thereof.

The judgment of the trial court is reversed and the case remanded for further proceedings consistent with this opinion.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.