BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE PHILLIP J. CLINE, DISTRICT ATTORNEY, COUNTY OF TULARE, has requested an opinion on the following question:
In delegating its investment authority over surplus county funds to the county treasurer, may a county board of supervisors set conditions with respect to contracts for investment management services executed by the treasurer?
 CONCLUSION
In delegating its investment authority over surplus county funds to the county treasurer, a county board of supervisors may not set conditions with respect to contracts for investment management services executed by the treasurer.
 ANALYSIS
The question presented for resolution concerns the ability of a county board of supervisors to condition its delegation of authority to invest surplus county funds to the county treasurer. Specifically, we are asked whether this delegation of authority may be subject to conditions set by the board with respect to contracts executed by the treasurer with investment managers or other financial advisors. Such conditions would include, for example, setting a maximum amount of money that could be managed by a particular investment manager. We conclude that the board may not make its delegation of authority to the treasurer subject to such conditions.
The Legislature has enacted a detailed statutory scheme (Gov. Code, §§ 53600 — 53997)[1] for the deposit and investment of local agency surplus funds. A county is a local agency (§ 53600) and its governing body, the county board of supervisors, is empowered to make investment decisions on behalf of the county (§§ 53600.3, 53607). However, a board of supervisors may delegate its investment authority to the county treasurer under the terms of section 53607:
The authority of the legislative body to invest or to reinvest funds of a local agency, or to sell or exchange securities so purchased, may be delegated for a one-year period by the legislative body to the treasurer of the local agency, who shall thereafter assume full responsibility for those transactions until the delegation of authority is revoked or expires, and shall make a monthly report of those transactions to the legislative body. Subject to review, the legislative body may renew the delegation of authority pursuant to this section each year.
In a separate statutory scheme dealing specifically with county treasurers (§§ 27000-27137), the Legislature has similarly provided in section 27000.1:
Subject to Section 53607, the board of supervisors may, by ordinance, delegate to the county treasurer the authority to invest or reinvest the funds of the county and the funds of other depositors in the county treasury, pursuant to [sections 53600-53997]. The county treasurer shall thereafter assume full responsibility for those transactions until the board of supervisors either revokes its delegation of authority, by ordinance, or decides not to renew the annual delegation, as provided in Section 53607. Nothing in this section shall limit the county treasurer's authority pursuant to Section 53635 or 53684.[2]
When making investment decisions for a county, the board of supervisors has a fiduciary duty and is subject to the prudent investor standard. Section 53600.3 states:
Except as provided in subdivision (a) of Section 27000.3, all governing bodies of local agencies or persons authorized to make investment decisions on behalf of those local agencies investing public funds pursuant to this chapter are trustees and therefore fiduciaries subject to the prudent investor standard. When investing, reinvesting, purchasing, acquiring, exchanging, selling, or managing public funds, a trustee shall act with care, skill, prudence, and diligence under the circumstances then prevailing, including, but not limited to, the general economic conditions and the anticipated needs of the agency, that a prudent person acting in a like capacity and familiarity with those matters would use in the conduct of funds of a like character and with like aims, to safeguard the principal and maintain the liquidity needs of the agency. Within the limitations of this section and considering individual investments as part of an overall strategy, investments may be acquired as authorized by law.
Section 27000.3, in turn, provides:
(a) With regard to county funds deposited in the county treasury, the board of supervisors is the agent of the county who serves as a fiduciary and is subject to the prudent investor standard, unless a delegation has occurred pursuant to Section 53607 in which case the county treasurer shall be the agent of the county with respect to these funds, serve as a fiduciary, and be subject to the prudent investor standard and the board of supervisors shall not be the agent, serve as a fiduciary, or be subject to the prudent investor standard.
 (b) With regard to funds deposited in the county treasury that are deposited by local agencies other than the county and at the discretion of those local agencies, the county treasurer serves as a fiduciary subject to the prudent investor standard.
 (c) When investing, reinvesting, purchasing, acquiring, exchanging, selling, or managing public funds, the county treasurer or the board of supervisors, as applicable, shall act with care, skill, prudence, and diligence under the circumstances then prevailing, specifically including, but not limited to, the general economic conditions and the anticipated needs of the county and other depositors, that a prudent person acting in a like capacity and familiarity with those matters would use in the conduct of funds of a like character and with like aims, to safeguard the principal and maintain the liquidity needs of the county and the other depositors. Within the limitations of this section and considering individual investments as part of an overall investment strategy, investments may be acquired as authorized by law. Nothing in this chapter is intended to grant investment authority to any person or governing body except as provided in Sections 53601, 53607, and 53635.
Section 27000.5 describes the objectives of the board of supervisors or the treasurer, as the case may be, when investing surplus county funds:
When investing, reinvesting, purchasing, acquiring, exchanging, selling, or managing public funds, the primary objective of the county treasurer or the board of supervisors, as the case may be, shall be to safeguard the principal of the funds under the treasurer's or the board's control. The secondary objective shall be to meet the liquidity needs of the depositor. The third objective shall be to achieve a return on the funds under his or her control.
When a county invests surplus funds, the board of supervisors may establish a county treasury oversight committee. (§ 27131.) Among those serving on the committee are the treasurer and a representative of the board of supervisors. (§ 27132, subds. (a), (c).) Section 27133 requires the treasurer to prepare annually for the committee an investment policy that includes:
(a) A list of securities or other instruments in which the county treasury may invest, according to law, including the maximum allowable percentage by type of security.
 (b) The maximum term of any security purchased by the county treasury.
 (c) The criteria for selecting security brokers and dealers from, to, or through whom the county treasury may purchase or sell securities or other instruments. The criteria shall prohibit the selection of any broker, brokerage, dealer, or securities firm that has, within any consecutive 48-month period following January 1, 1996, made a political contribution in an amount exceeding the limitations contained in Rule G-37 of the Municipal Securities Rulemaking Board, to the local treasurer, any member of the governing board of the local agency, or any candidate for those offices.
The "oversight committee shall cause an annual audit to be conducted," which "may include issues relating to the structure of portfolio investment and risk." (§ 27134.) While the committee has oversight responsibility, it may not "direct individual investment decisions, select individual investment advisors, brokers, or dealers, or impinge on the day-to-day operations of the county treasury." (§ 27137.)
In 79 Ops.Cal.Atty.Gen. 88 (1996) we considered whether a county treasurer could contract with an investment manager, where the board of supervisors had previously delegated its investment authority to the treasurer. Under the proposed contract, the manager would be responsible for selecting, purchasing, and selling individual securities. We first noted the lack of express statutory authorization for a treasurer to allow investment decisions to be made by an outside manager, but determined that such authorization was implied based upon the treasurer's duties as a trustee of the county's funds. (Id. at p. 90.) We concluded that such an arrangement was permissible if the treasurer exercised prudence in selecting the manager and imposed safeguards to prevent the manager's abuse of discretion:
"As previously indicated, upon receiving authority from the board of supervisors to invest county funds, the treasurer assumes full responsibility for that function. (§ 27000.1.) However, it is contemplated by the Legislature that the treasurer, in making investments for the county (§ 53607), will employ necessary financial advisors, consultants, and managers in carrying out his responsibilities. Section 53635, for example, provides in part:
 ". . . A local agency purchasing or obtaining any securities described in this section, in a negotiable, bearer, registered, or nonregistered format, shall require delivery of all the securities to the local agency, including those purchased for the agency by financial advisors, consultants, or managers using the agency's funds, by book entry, physical delivery, or by third-party custodial agreement (Emphasis added.)
"We believe that given (1) the relatively large amount of funds which may be administered by a county treasurer, (2) the degree of skill required for investing in the complex forms of securities described in section 53635, (3) the section 27133 requirement for annual preparation by the treasurer of an investment policy to control investment decisions (including the maximum allowable percentage by type of security), and (4) the section 27134 requirement for an annual audit which "may include issues relating to the structure of the investment portfolio and risk," a county treasurer may grant the authority in question under the prudent investor standard, assuming he has exercised prudence in the selection of the manager and has imposed suitable safeguards to prevent abuse in the exercise of discretion by the manager. Of course, in contracting with an investment manager, the treasurer may not abdicate his responsibility for the investment of county funds." (Id. at pp. 9495, fn. omitted.)
While our prior opinion determined that the treasurer could use his or her delegated investment authority to contract with an investment manager, here we are concerned with whether a board of supervisors may set conditions upon such contracts when it delegates its investment authority to the treasurer.
Initially, we observe that a delegation of investment authority by a board of supervisors may only be accomplished by ordinance (§ 27000.1), it is effective only for a one-year period, and it is subject to renewal on an annual basis (§ 53607). After a delegation of authority, the treasurer "assumes full responsibility" for the investment of local agency funds. (§§ 27000.1, 53607.) If the board decides not to renew the delegation at the end of the year (§ 27000.1), the treasurer's authority expires (§ 53607). The board may revoke the delegation at any time by ordinance. (§ 27000.1.) No other powers are specifically reserved to the board in connection with the delegation of its investment authority to the treasurer. In examining the language of sections 53607 and 27000.1, we are mindful of two implied negatives that courts have traditionally recognized. First, no power may be exercised that is in excess of the granted authority. (Wildlife Alive v. Chickering (1976) 18 Cal.3d 190, 196; 79 Ops.Cal.Atty.Gen. 126, 129-130 (1993).) Second, where the mode by which a power may be exercised is prescribed, the mode prescribed is the measure of the power. (People v. Zamora (1980) 28 Cal.3d 88, 98; Wildlife Alive v. Chickering, supra, 18 Cal.3d at p. 196; 76 Ops.Cal.Atty.Gen. 86, 89 (1993).)
Sections 53607 and 27000.1 together grant a power and prescribe the mode of its exercise. Nothing in these statutes authorize a limited delegation of authority whereby the board retains certain powers to direct or influence investment choices or the selection of investment advisors by the treasurer. The adoption of an ordinance is specified only in connection with effecting a delegation of investment authority or revoking it. Both statutes speak of the treasurer "assuming full responsibility" for the county's investment transactions until the delegation of authority expires at the end of the year or is sooner revoked. No partial or shared responsibility is implied in the authorizing language of these statutes.
The present situation may be contrasted with that examined in 62 Ops.Cal.Atty.Gen. 687 (1979). There we concluded that under the County Employees Retirement Law of 1937, the selection of brokerage firms by a county treasurer for the purchase or sale of securities on behalf of the county retirement system could be limited by the board of retirement to a list of brokers that it approved. The treasurer was statutorily required to have the authorization of the board for the investment in or sale of any security, and we found the specification of brokerage firms to be incidental to the power of the board in authorizing the investment or sale of securities. The board, rather than the treasurer, was required to follow the Legislature's declaration of policy regarding the transaction of business by brokerage firms on behalf of the retirement system. We thus perceived a legislative intent to have the board control the selection of brokerage firms. (Id. at pp. 689690.)
Here, on the other hand, the board of supervisors is empowered to delegate its investment authority to the treasurer, not to authorize certain actions by him or her. Since the treasurer assumes full responsibility for the investment transactions under the delegated authority, imposing conditions upon the treasurer's ability to contract with investment advisors would be inconsistent with, rather than incidental to, the power of the board to delegate. Moreover, the related statutes indicate a legislative intent that the delegation of authority is not to be encumbered by overlapping fiduciary responsibilities that could result if the treasurer were to be required to comply with the board's conditions for contracts with investment advisors. In short, limiting a treasurer's contract prerogatives under a delegation of investment authority is distinguishable from limiting his or her selection of brokerage firms where another entity retains the power to so authorize by statute.
An examination of section 27000.3, describing the respective roles of the board of supervisors and the treasurer both before and after a delegation has occurred, supports our construction of sections 53607 and 23000.1. As quoted above, subdivision (a) of section 27000.[3] designates the board of supervisors as a fiduciary and subject to the prudent investor standard with respect to county funds "unless a delegation has occurred pursuant to Section 53607 in which case the county treasurer shall be the agent of the county with respect to these funds." When a delegation occurs, the treasurer serves as the fiduciary subject to the prudent investor standard, and "the board of supervisors shall not be the agent, serve as a fiduciary, or be subject to the prudent investor standard." Thus, after a delegation of authority by a board of supervisors, the standards and responsibilities that applied to the board are completely transferred to the treasurer. Any delegation of authority that creates a concurrent division of fiduciary responsibilities between the board of supervisors and the treasurer would be inconsistent with the directives of section 27000.3.
A fiduciary is "[a] person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, trust, confidence, and candor" or "one who must exercise a high standard of care in managing another's money or property." (Black's Law Dict. (8th ed. 2004) p. 658.) In selecting an investment manager or financial consultant who will manage the investment of public funds, the treasurer has a fiduciary responsibility. Any conditions imposed by the board of supervisors upon such selection process would result in the board also exercising responsibilities of a fiduciary, contrary to the terms of section 27000.3.[4]
Of course, if a board of supervisors is dissatisfied with the treasurer's contract with a particular investment manager, or is dissatisfied for any other reason, its remedy is to revoke the treasurer's authority or allow its delegation of authority to expire. (See Steiner v. Superior Court (1996)50 Cal.App.4th 1771, 1786 ["Having delegated the power, the only way to remedy any imprudent or wrongful action by [the treasurer] would be to revoke his power"].)
Finally, we find support for our interpretation of sections 27000.1, 27000.3, and 53607 in the general observations made by the court in Hicks v. Board of Supervisors (1977) 69 Cal.App.3d 228, 242, regarding the relationship between a county board of supervisors and the district attorney:
The board of supervisors has no inherent powers; the counties are legal subdivisions of the state, and the county board of supervisors can exercise only those powers expressly granted it by Constitution or statutes and those necessarily implied therefrom. [Citations.] An examination of the provisions of the applicable statutes and of the Constitution reveals that the board of supervisors has been granted no power of control over the district attorney in the exercise of his discretionary duties. Although the board of supervisors has the power to prescribe the number, compensation, tenure, and appointment of county employees [citation], the board has no power to itself appoint deputies or assistants to the district attorney [citation]; although the county board of supervisors has authority to supervise county officers in order to insure that they faithfully perform their duties [citation], the board has no power to perform county officers' statutory duties for them or direct the manner in which duties are performed [citation], and although the board of supervisors exercises control over the county budget [citation], the board may not, by failing to appropriate funds, prevent the district attorney from incurring necessary expenses for crime detection as county charges [citations].
The Supreme Court has ruled similarly in connection with a county assessor — the supervisory authority of a board of supervisors over the county assessor is limited to ensuring the faithful performance of the duties of that office, and does not permit the board to control, directly or indirectly, the manner in which the duties are performed. (Connolly v. County of Orange (1992)1 Cal.4th 1105, 1113, fn. 9.)
We conclude in delegating its investment authority over surplus county funds to the county treasurer, a county board of supervisors may not set conditions with respect to contracts for investment management services executed by the treasurer.
[1] All section references hereafter are to the Government Code.
[2] Section 53635 concerns pooled investments of local agencies, and section 53684 provides an alternative procedure for investment of excess funds. Neither section is directly relevant to our analysis.
[3] Section 53601 sets forth the financial instruments that are authorized for investment by a local agency that does not pool money in deposits or investments with other local agencies.
[4] Nothing in trust law principles undermines the mandate of section 27000.3. As a board of supervisors is not serving as a trustee after its delegation of authority, we do not find applicable the Probate Code standards for a trustee who delegates investment and management functions to an agent. Those standards require the trustee to establish the scope and terms of the delegation and to provide continuing oversight of the agent's activities. (Prob. Code, § 16052, subd. (a).) In contrast, sections 27000.1, 27000.3, and 53607 do not contemplate either a limited delegation of authority by a board of supervisors or the board's continuing role as a trustee following delegation of its investment authority.