[No. B166499. Second Dist., Div. Three. Dec. 15, 2004.]

PLASTIC PIPE AND FITTINGS ASSOCIATION, Plaintiff and Respondent,
v.
CALIFORNIA BUILDING STANDARDS COMMISSION et al., Defendants
and Appellants.

1392

1394

## COUNSEL

Bill Lockyer, Attorney General, Andrea Lynn Hoch, Chief Assistant Attorney General, Louis R. Mauro, Assistant Attorney General, Gary Tavetian, Christine Sproul, Ramon M. De La Guardia and Christopher E. Krueger, Deputy Attorneys General, for Defendants and Appellants.

Rockard J. Delgadillo, City Attorney (Los Angeles), Jack Brown, Assistant City Attorney; Dennis J. Herrera, City Attorney (San Francisco) and Kate Herrmann Stacy, Deputy City Attorney, for City of Los Angeles and City and County of San Francisco as Amici Curiae on behalf of Defendants and Appellants.

Adams, Broadwell, Joseph & Cardozo, Daniel L. Cardozo, Richard T. Drury and Thomas E. Enslow for Sierra Club, Communities for a Better Environment, Center for Environmental Health, Planning and Conservation League, California Professional Firefighters Association, Consumer Federation of California and California Pipe Trades Council as Amici Curiae on behalf of Defendants and Appellants.

J. Scott Kuhn for Communities for a Better Environment as Amicus Curiae on behalf of Defendants and Appellants.

Brown, Winfield & Canzoneri, Brant H. Dveirin and Jack L. Henningsen for Plaintiff and Respondent.

Kronick, Moskovitz, Tiedemann & Girard and Jonathan P. Hobbs for California Building Officials as Amicus Curiae on behalf of Plaintiff and Respondent.

Hatch & Parent and Lisabeth D. Rothman for California Building Industry Association and Building Industry Legal Defense Foundation as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

CROSKEY, J.—The California Building Standards Commission (Commission) and five other state agencies (Agencies) appeal a judgment granting a peremptory writ of mandate in favor of Plastic Pipe and Fittings Association (PPFA).[1] The writ of mandate compels the Commission and the Agencies to adopt as part of the California Plumbing Code provisions of the Uniform Plumbing Code allowing the use of cross-linked polyethylene (PEX) pipes, vacate their exceptions to the adoption of those provisions, and vacate the Commission's finding that review is warranted under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) with respect to allowing the use of PEX.

The Commission and the Agencies contend (1) the superior court's conclusion that they acted arbitrarily and without evidentiary support by refusing to adopt the Uniform Plumbing Code provisions allowing the use of PEX was error; (2) the decision not to allow the use of PEX was not procedurally unfair; (3) the Commission's decision to defer approval of PEX pending CEQA review was proper; and (4) the writ of mandate impermissibly directs the Commission and the Agencies to exercise their discretion in a particular manner. We agree with the first three contentions and do not reach the fourth.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Adoption and Approval of Building Standards.

The Commission is a state agency responsible for approving or adopting building standards adopted or proposed by other agencies, as discussed *post*. Building standards ordinarily are based on model codes with any amendments deemed appropriate. Building standards approved or adopted by the Commission become part of the California Building Standards Code (Code), of which the California Plumbing Code is a part.

The International Association of Plumbing and Mechanical Officials, a private organization, published the 2000 Uniform Plumbing Code, a model code, in October 1999. The model code included provisions allowing the use of PEX pipes and fittings. PEX is a form of plastic.

The Commission and the Agencies initially proposed adopting the model code to apply to buildings regulated by the Agencies, including the provisions

---

[1] The other state agencies party to this appeal as appellants are the Department of Housing and Community Development, Division of the State Architect—Structural Safety, Office of Statewide Health Planning and Development, Department of Health Services, and Department of Food and Agriculture (collectively Agencies).

allowing the use of PEX.[2] They each provided an initial statement of reasons for the proposed building standards and a 45-day public comment period commencing in July 2001. During the public comment period, the Commission received a letter from Daniel L. Cardozo on behalf of the California State Pipe Trades Council, a trade group, objecting to allowing the use of PEX. The letter attached a letter from Thomas Reid, an environmental consultant, stating his opinion that the use of PEX pipes potentially could result in contamination of potable water and the environment by chemical leaching of substances from the pipes, and that the pipes potentially could be subject to permeation by substances of low molecular weight contained in soil and groundwater, such as methyl tertiary-butyl ether (MTBE) and pesticides. Reid also stated that the pipes potentially could be subject to mechanical failure, and that the pipes may rupture and create openings in the event of a fire and thereby facilitate the spread of fire. He stated that because PEX is not widely used in the United States information on its properties is not readily available.

Reid stated that normal polyethylene softens at high temperatures, and that the material can gain temperature resistance through the cross-linking of polymer chains with chemical bonds. He stated that cross-linked polyethylene (PEX) typically is manufactured using any of three different methods of chemical bonding, and that the different methods may result in different chemical and mechanical characteristics of the finished material. He also stated that PEX is a member of the polyolefin family of polymers, of which polybutylene (PB) is also a member, that antioxidants must be added to the pipe resin to protect polyolefins from oxidization and ultraviolet light, and that antioxidants in the pipe resin are consumed when the pipe is exposed to oxidizers such as chlorine and oxygen. He stated that PB pipes suffered from premature mechanical failure due to oxidant degradation despite the use of antioxidant additives, and eventually were taken off the market.

Reid stated his opinion that state agencies should not rely on certification by NSF International (NSF), a private organization that develops public health and safety standards for products, in determining whether the potential risks of using PEX are acceptable. He explained that NSF expressly disclaims

---

[2] The Department of Housing and Community Development adopts building standards applicable to dwellings and transient lodging facilities (Health & Saf. Code, § 17921, subd. (a)), the Division of the State Architect—Structural Safety adopts building standards applicable to public elementary and secondary schools, community colleges, and "essential services" buildings (Ed. Code, §§ 17310, 81142; Health & Saf. Code, § 16022), the Office of Statewide Health Planning and Development adopts building standards applicable to hospitals and other health care facilities (Health & Saf. Code, § 129850), the Department of Health Services adopts building standards applicable to public swimming pools (id., § 116050), and the Department of Food and Agriculture adopts building standards applicable to dairies and meet inspection facilities.

any responsibility for the decision whether to use a certified product, does not make its test results available for others to review, and limits its testing protocols based on undisclosed assumptions derived from information provided by manufacturers.

The Commission also received a letter from the California Professional Firefighters stating that PEX may present dangers in the event of a fire by creating toxic smoke and accelerating the spread of fire, and urging the Commission to conduct environmental review under CEQA. The Commission and the Agencies also received comments supportive of allowing the use of PEX.

After receiving public comments and conducting a public hearing, the Agencies modified their proposed building standards by excluding the provisions allowing the use of PEX. The Commission and the Agencies provided further public comment periods on the amended proposals.

The Agencies each provided a final statement of reasons for proposed building standards. The final statements of reasons referred to Reid's comments and stated that neither the agencies nor the Commission had sufficient time to evaluate the potential environmental impact and other potential consequences of allowing the use of PEX or sufficient time to determine whether the use of PEX was "compliant with the laws of the State of California." The Agencies each provided an analysis of the nine criteria under Health and Safety Code section 18930, subdivision (a), pertaining to the building standards as a whole. The Commission provided the analyses on behalf of the Department of Health Services and the Department of Food and Agriculture pursuant to Health and Safety Code section 18928, subdivision (c).

The Commission provided a final statement of reasons in April 2002 stating in pertinent part:

"The public interest requires that when considering building products the approving agencies must always balance the potential benefits against the potential risks. When approving a product new to the California Plumbing Code, such as cross-linked polyethylene tubing (PEX), agencies have an obligation to be reasonably assured that the product does not produce an unreasonable risk to health or safety. When balancing these interests, agencies must resolve close questions in favor of protecting the health and welfare of consumers and of workers installing these products. . . .

"At this time, the CBSC [Commission] feels it is obligated to give both the positive and negative comments and evidence equal credibility. It is unable at

this time to conclude the negative comments concerning leachable products and permeation are unfounded. The CBSC has limited resources and the need to complete the triennial code adoption cycle has prevented the CBSC from addressing and investigating the issues raised regarding the PEX and the public interest in approving or not approving PEX.

"Although the CBSC has not determined yet whether the claims of Mr. Cardozo are valid, the CBSC will not adopt PEX, at this time, due to insufficient time remaining in its 2001 triennial code adoption cycle to adopt the 2000 UPC and to determine if this change in the model code is compliant with the laws of the State of California. Therefore, the CBSC does not believe the adoption of PEX would . . . be in the public interest at this time."

The Commission also provided an analysis of the nine criteria under Health and Safety Code section 18930, subdivision (a), stating, in relevant part, "The public interest requires the deletion of authorization for the use of PEX until further exploration of the health and safety issues raised. At this time the CBSC cannot with certainty determine that the use of PEX does no[t] present health and safety issues for consumers and installers." The Commission stated further, "in light of the conflicting claims regarding the use of PEX, it is not appropriate to approve the use of PEX in California until these conflicts have been resolved."

The Agencies adopted and the Commission approved the 2000 Uniform Plumbing Code in May 2002, but they excepted and did not adopt the provisions that would allow the use of PEX pipes in buildings regulated by the Agencies. The Commission found that the proposed approval of the use of PEX may result in a significant environmental impact and ordered the development of a coordinated procedure to proceed under CEQA.

2. *Trial Court Proceedings.*

PPFA filed a petition for writ of mandate (Code Civ. Proc., § 1085) in the superior court in May 2002 against the Commission and the Agencies challenging their failure to approve PEX for the Agencies' uses. California Pipe Trades Council, Sierra Club, Planning and Conservation League, California Professional Firefighters Association, Northern California Mechanical Contractors Association, and Consumer Federation of California moved to intervene in the proceeding in support of the Commission and the Agencies. The superior court denied the motion for intervention on the grounds that the interveners had no immediate interest in the proceeding and that the Commission and the Agencies could adequately represent the interveners' interests. The court also denied a motion by the same organizations for leave to file a brief as amici curiae.

PPFA argued in the memorandum of points and authorities in support of its petition that the decision to exclude PEX was arbitrary and capricious; that there was no substantial evidence to support the decision; that the decision was fraught with procedural irregularities and undue political influence; that as to the Department of Housing and Community Development the model code was automatically adopted and approved, including the provisions allowing the use of PEX, due to failure by the department and the Commission to act within the statutory time periods; that CEQA does not apply to the adoption and approval of building standards; and that if CEQA did apply it would apply to the entire Code rather than only to the provisions allowing the use of PEX.

The Commission and the Agencies argued in opposition that substantial evidence supported their conclusion that the information available to them was insufficient to overcome their concerns about potential problems with PEX; that there were no procedural irregularities; that the provisions allowing the use of PEX were not adopted and approved automatically as to the Department of Housing and Community Development; and that the decision to conduct review under CEQA was proper.

At the hearing on the merits of the petition, the superior court was impressed by the apparently undisputed representation that 180 local jurisdictions in California already have approved the use of PEX for some purposes, that 49 states have adopted model code provisions allowing the use of PEX, and that PEX has been used in Europe for 20 to 30 years. The court stated, "I would think that somebody would have been able to come up with something showing that, indeed, there's been a tremendous problem with this product in Europe or tremendous problem with it all over the country or a tremendous problem with it in California; and yet, there's really nothing that I can see here factually that's been pulled together with respect to P.E.X." The court questioned whether allowing the use of PEX in the Code would make any difference at all if PEX already is being used extensively in California. On the other hand, the court suggested that Code approval of PEX might not result in widespread use of PEX if the Code does not make the use of PEX mandatory. The parties disputed the extent to which PEX has been used in California and the effect of Code approval on the amount of its use.

The court stated that an agency adopting a model code must justify any exception to a model code provision, and that there must be evidence to support the reasons given for the exception. The court stated that the statements in the Reid letter were conclusory and lacked a "factual foundation." The court stated that Reid did not explain the purported chemical similarities between PEX and PB or explain how those similarities would result in significant environmental impacts. The court also suggested that the

analyses of the nine criteria under Health and Safety Code section 18930, subdivision (a), did not state sufficiently why the model code provisions allowing the use of PEX were "inadequate."

The court stated that the Agencies' and the Commission's treatment of PEX appeared to be inconsistent with their treatment of other pipe materials about which they had expressed no concerns, and that they appeared to be splitting the project for purposes of CEQA by applying CEQA with regard to PEX but not with regard to other materials allowed under the Code. The court questioned why the Agencies and the Commission did not apply CEQA almost two years earlier, before the initial public comment period.

The court in a minute order granted the petition "on the grounds raised by Petitioner, except for the ground that PEX was adopted as a matter of law." The court entered a judgment in February 2003 and issued a peremptory writ of mandate ordering the Commission and the Agencies to adopt and approve the 2000 Uniform Plumbing Code provisions allowing the use of PEX, vacate their exceptions to the use of PEX, and vacate the findings that approval of PEX may result in a significant environmental impact. The Commission and the Agencies appeal the judgment.

## CONTENTIONS

The Commission and the Agencies contend (1) the superior court's conclusion that they acted arbitrarily and without evidentiary support by refusing to adopt the Uniform Plumbing Code provisions allowing the use of PEX was error; (2) the decision not to allow the use of PEX was not procedurally unfair; (3) the decision to conduct a review under CEQA was proper; and (4) the judgment impermissibly directs the Commission and the Agencies to exercise their discretion in a particular manner.

PPFA contends (1) an agency adopting a model code must make "evidentiary findings" to justify any deviation from the model code, and the Agencies failed to do so; (2) Reid's comments are speculative, factually unsupported, and do not support the decision to exclude PEX; (3) the Commission's approval of PEX for some uses while excluding it for the Agencies' uses was arbitrary and capricious, and the exclusion of PEX while approving the use of corrugated stainless steel tubing (CSST) was arbitrary and capricious; (4) the rulemaking process was procedurally unfair because the Agencies failed to act within the statutory time period, unreasonably delayed the decision to apply CEQA, and conducted a "sham" hearing to announce a predetermined decision, among other reasons; (5) as to the Department of Housing and Community Development, the model code was automatically adopted and approved as a matter of law, including the provisions allowing use of PEX,

due to failure by the department and the Commission to act within the statutory time periods; (6) CEQA does not apply because (a) there is no causal link between approval of the use of PEX and a physical change in the environment, (b) the statutory time limits for adoption and approval of building standards do not allow time for environmental review, so the Legislature impliedly exempted the activity from CEQA, and (c) application of CEQA would not achieve CEQA's goal of informing the public about the environmental consequences of approval of use of PEX before the decision is made because PEX already is widely in use; (7) the evidence does not support the conclusion that PEX may have a significant impact on the environment; (8) the Commission and the Agencies improperly delayed approval of PEX by invoking CEQA for the first time at the conclusion of the rulemaking process; (9) the Commission and the Agencies improperly split the project by applying CEQA to some uses of PEX but not others and by applying CEQA to PEX but not to other plumbing materials; and (10) the judgment compelling the Commission and the Agencies to allow the use of PEX was proper.

## DISCUSSION

### 1. Building Standards Law.

The California Building Standards Law (Health & Saf. Code, § 18901 et seq.) provides for the promulgation of building standards by state agencies.[3] State agencies adopt or propose building standards that are then approved or adopted by the Commission. (*Id.*, § 18930, subd. (a).) The adopting agency must submit to the Commission a written analysis of the building standards, "which shall, to the satisfaction of the commission, justify the approval thereof in terms of the following criteria:

"(1) The proposed building standards do not conflict with, overlap, or duplicate other building standards.

"(2) The proposed building standard is within the parameters established by enabling legislation and is not expressly within the exclusive jurisdiction of another agency.

"(3) The public interest requires the adoption of the building standards.

---

[3] The Building Standards Law defines building standards, in pertinent part, as "any rule, regulation, order, or other requirement, including any amendment or repeal of that requirement, that specifically regulates, requires, or forbids the method of use, properties, performance, or types of materials used in the construction, alteration, improvement, repair, or rehabilitation of a building, structure, factory-built housing, or other improvement to real property, including fixtures therein, and as determined by the commission." (Health & Saf. Code, § 18909, subd. (a).)

"(4) The proposed building standard is not unreasonable, arbitrary, unfair, or capricious, in whole or in part.

"(5) The cost to the public is reasonable, based on the overall benefit to be derived from the building standards.

"(6) The proposed building standard is not unnecessarily ambiguous or vague, in whole or in part.

"(7) The applicable national specifications, published standards, and model codes have been incorporated therein as provided in this part, where appropriate.

"(A) If a national specification, published standard, or model code does not adequately address the goals of the state agency, a statement defining the inadequacy shall accompany the proposed building standard when submitted to the commission.

"(B) If there is no national specification, published standard, or model code that is relevant to the proposed building standard, the state agency shall prepare a statement informing the commission and submit that statement with the proposed building standard.

"(8) The format of the proposed building standard is consistent with that adopted by the commission.

"(9) The proposed building standard, if it promotes fire and panic safety, as determined by the State Fire Marshal, has the written approval of the State Fire Marshal." (Health & Saf. Code, § 18930, subd. (a).)

Health and Safety Code section 18928, subdivision (c), states that if an agency responsible for the adoption of building standards fails to adopt a model code within one year after its publication, the Commission "shall convene a committee to recommend to the commission the adoption, amendment, or repeal, on the agencies' behalf, of the most recent editions of the model codes . . . and necessary state standards."

The Commission must either approve the building standards adopted by a state agency, return the standards for amendment with recommended changes, or reject the standards.[4] (Health & Saf. Code, § 18931, subd. (a).) If the Commission fails to act within 120 days after receiving an agency's

---

[4] The Commission here agreed with the Agencies' decisions. We therefore need not discuss the standard of review applicable to the Commission's review of the Agencies' determinations and analyses (Health & Saf. Code, § 18930, subds. (d)(1) & (e)).

adopted standards, the standards are deemed approved without further review. (*Ibid.*) Approved standards are codified in the California Building Standards Code. (*Id.*, §§ 18931, subd. (b), 18938.) The California Plumbing Code is part of the Code. (Cal. Code Regs., tit. 24, pt. 5, ch. 1, § 101.0 et seq.)

The Commission receives proposed building standards from state agencies for consideration in an annual code adoption cycle, publishes the Code in its entirety every three years, and publishes annual supplements as necessary. (Health & Saf. Code, §§ 18929.1, subd. (a), 18942, subd. (a).)

> 2. *The Commission's Decision Not to Allow the Use of PEX Was Proper.*
>
> a. *Standard of Review.*

■ The Commission's approval of building standards under the Building Standards Law is a quasi-legislative act of administrative rulemaking. (*20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 275 [32 Cal.Rptr.2d 807, 878 P.2d 566]; see *International Assn. of Plumbing etc. Officials v. California Building Stds. Com.* (1997) 55 Cal.App.4th 245, 254 [64 Cal.Rptr.2d 129].) ■ Judicial review of a quasi-legislative act in an ordinary mandamus proceeding (Code Civ. Proc., § 1085) is limited to determining whether the agency's action was arbitrary, capricious, entirely without evidentiary support, or procedurally unfair. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361 [87 Cal.Rptr.2d 654, 981 P.2d 499].) This generally means that a court cannot disturb the agency's decision if substantial evidence in the administrative record supports the decision. (*Id.* at pp. 361, 374; *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571–574 [38 Cal.Rptr.2d 139, 888 P.2d 1268].) A court's review is limited to evidence in the administrative record.[5] (*Associated Builders, supra,* at p. 374; *Western States, supra,* at pp. 571, 579.) A court reviewing a quasi-legislative act cannot reweigh the evidence or substitute its own judgment for that of the agency. (*Shapell Industries, Inc. v. Governing Board* (1991) 1 Cal.App.4th 218, 230 [1 Cal.Rptr.2d 818].) This deferential standard of review reflects "deference to the separation of powers between the Legislature and the judiciary, to the legislative delegation of administrative authority to the agency, and to the presumed expertise of the agency within its scope of authority." (*California Hotel & Motel Assn. v. Industrial Welfare Com.* (1979) 25 Cal.3d 200, 212 [157 Cal.Rptr. 840, 599 P.2d 31].) A court independently determines, however, whether the agency acted within the scope of its statutory authority.

---

[5] Because our review is limited to the administrative record, we reject PPFA's attempt to impeach the decision by the Department of Housing and Community Development by reference to the department's initial statement of reasons dated July 2004 in connection with a code adoption cycle subsequent to the one here at issue.

(*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11, fn. 4 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

█ On appeal, we independently review the agency's decision and apply the same standard of review that governs the superior court. (*Carrancho v. California Air Resources Bd.* (2003) 111 Cal.App.4th 1255, 1275 [4 Cal.Rptr.3d 536].)

█ Evidence is substantial if a reasonable trier of fact could conclude that the evidence is reasonable, credible, and of solid value. (*Wilmot v. Commission on Professional Competence* (1998) 64 Cal.App.4th 1130, 1139 [75 Cal.Rptr.2d 656].) █ The uncorroborated testimony of one witness can constitute substantial evidence, unless the testimony is inherently unreliable. (Evid. Code, § 411; *People v. Scott* (1978) 21 Cal.3d 284, 296 [145 Cal.Rptr. 876, 578 P.2d 123].)

b. *The Evidence Supports the Decision.*

The Agencies and the Commission adopted and approved the 2000 Model Plumbing Code with the exception of certain provisions allowing the use of PEX. The Agencies' decision not to allow the use of PEX was based on their common conclusion that the use of PEX potentially could present an unacceptable danger to public health and safety and that the information in the administrative record was insufficient for them to assuage their concerns. The Commission agreed with the Agencies' conclusion and approved the adopted standards, including the exclusion of PEX, for the same reason.

We conclude that the evidence in the administrative record supports the decision by the Commission and the Agencies. The Reid letter raised grave concerns about the potential dangers posed by the use of PEX and the absence of information sufficient to reach a conclusion concerning the integrity of PEX pipes, including the potential for (1) chemical leaching of substances from the pipes; (2) permeation of the pipes by toxic substances contained in the surrounding soil and groundwater; (3) mechanical failure of the pipes; and (4) rupturing of the pipes when exposed to high heat, which may create openings that could contribute to the spread of fire. The record shows that Reid has more than 20 years of experience studying public health and mechanical performance issues related to pipe materials, has directed an environmental consulting firm since 1972, holds a bachelor's degree in chemistry, and pursued graduate study in biology for several years. On this record, there is no reasonable question that Reid is qualified to state his opinion on these subjects.

█ The question is not whether the evidence supports the conclusion that PEX is unsafe and unsound for plumbing uses; the Commission and the

Agencies made no such finding. Rather, the question is whether the evidence supports the conclusion that the use of PEX potentially may present an unreasonable risk of harm and that the information available to the Commission and the Agencies was insufficient for them to determine whether the use of PEX actually would present an unreasonable risk of harm. We conclude that the Reid letter is substantial evidence both that PEX potentially may present an unreasonable risk of harm and that the information in the administrative record is insufficient to dispel the stated concerns. The Commission and the Agencies were entitled to rely on the Reid letter in the exercise of their discretion under Health and Safety Code section 18930, subdivision (a)(3) and (7), in determining whether allowing the use of PEX is in the "public interest" (*id.*, subd. (a)(3)) and whether incorporation of those model code provisions is "appropriate" (*id.*, subd. (a)(7)).

■ Contrary to PPFA's argument, the Commission and the Agencies were not required to make "evidentiary findings" in support of their decision. Health and Safety Code section 18930, subdivision (a), states that the adopting agency must provide an analysis of nine criteria and that the analysis must justify the proposed building standards "to the satisfaction of the commission." The Commission must review the standards and the agency's analysis. (*Id.*, § 18930, subds. (d)(1) & (e), § 18931, subd. (a).) Section 18930 recognizes that the agency's analysis may involve "factual determinations" and states that such factual determinations ordinarily are binding on the Commission, except where the building standard is "principally intended to protect the public health and safety." (*Id.*, § 18930, subds. (d)(1), (e).) The statute, however, does not state that the Commission or the adopting agency must make express factual findings to support its decision that a particular building standard is not in the public interest (*id.*, subd. (a)(3)) or that a particular model code provision "does not adequately address the goals of the state agency" (*id.*, subd. (a)(7).) Moreover, an administrative agency making a quasi-legislative decision is not required to make detailed factual findings supporting its decision. (*McKinny v. Board of Trustees* (1982) 31 Cal.3d 79, 88 [181 Cal.Rptr. 549, 642 P.2d 460].)

We also reject the arguments that the Commission cannot properly distinguish between the use of PEX in buildings regulated by the Agencies and its use in other buildings for which the Commission approved its use, and that the Agency cannot properly disallow the use of PEX pipes in buildings regulated by the Agencies while allowing the use of CSST pipes in those buildings. The Commission's determination that PEX is appropriate for use in buildings such as hospitals, psychiatric hospitals, skilled nursing facilities, children's nurseries, theaters, dance halls, and jails does not compel the conclusion that it is appropriate for use in the buildings governed by the Agencies. PPFA has not shown that the evidence compels the conclusion as a

matter of law that PEX must be appropriate for all buildings if it is appropriate for any or that if CSST is appropriate then PEX must be appropriate too.

> c. *The Model Code Provisions Were Not Automatically Adopted and Approved as a Matter of Law as to the Department of Housing and Community Development.*

Health and Safety Code section 17922, subdivision (a), states that the building standards adopted by the Department of Housing and Community Development and submitted to the Commission for approval "shall impose substantially the same requirements as are contained in the most recent editions of the following uniform industry codes as adopted by the organizations specified: [¶] . . . [¶] (3) The Uniform Plumbing Code of the International Association of Plumbing and Mechanical Officials." Subdivision (b) states, in pertinent part, "Except as provided in Part 2.5 (commencing with section 18901), in the absence of adoption by regulation, the most recent editions of the uniform codes referred to in this section shall be considered to be adopted one year after the date of publication of the uniform codes."

Health and Safety Code section 18931, subdivision (a), states that the Commission must, "In accordance with Section 18930 and within 120 days from the date of receipt of adopted standards, review the standards of adopting agencies and approve, return for amendment with recommended changes, or reject building standards submitted to the commission for its approval. When building standards are returned for amendment or rejected, the commission shall inform the adopting agency or state agency that proposes the building standards of the specific reasons for the recommended changes or rejection, citing the criteria required under Section 18930. When standards are not acted upon by the commission within 120 days, the standards shall be approved, including codification and publication in the California Building Standards Code, without further review and without return or rejection by the commission."

PPFA maintains that the Department of Housing and Community Development adopted the model code as a matter of law, including the provisions allowing the use of PEX, by failing to adopt building standards within one year after the publication of the model code in October 1999, and that the Commission approved the model code, including the PEX provisions, by failing to act on the adopted standards within 120 days after they were deemed adopted. Under PPFA's construction of the Building Standards Law, the most recent edition of a model code can become California law without any review by either the adopting agency or the Commission. The superior court rejected this argument, and so do we.

 The legislative power of the state is vested in the Legislature. (Cal. Const., art. IV, § 1.) An unconstitutional delegation of legislative authority occurs if a statute authorizes another person or group to make a fundamental policy decision or fails to provide adequate direction for the implementation of a fundamental policy determined by the Legislature. (*Carson Mobilehome Park Owners' Assn. v. City of Carson* (1983) 35 Cal.3d 184, 190 [197 Cal.Rptr. 284, 672 P.2d 1297]; *Kugler v. Yocum* (1968) 69 Cal.2d 371, 376–377 [71 Cal.Rptr. 687, 445 P.2d 303].) For the Legislature to grant a private association such as the International Association of Plumbing and Mechanical Officials the power to make law with no direction from the Legislature and no review by a state agency would be unconstitutional. (*International Association of Plumbing etc. Officials v. California Building Stds Com., supra,* 55 Cal.App.4th at p. 253.) We must construe a statute to avoid a constitutional invalidity if a constitutionally sound construction is reasonable. (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 10–11 [124 Cal.Rptr.2d 202, 52 P.3d 129].)

 Assuming arguendo that the model code was deemed adopted without amendment by the Department of Housing and Community Development under Health and Safety Code section 17922, subdivision (a), we construe Health and Safety Code section 18931, subdivision (a), to mean that the Commission is deemed to approve adopted building standards through inaction only if the Commission receives the adopted standards from the adopting agency. Section 18931, subdivision (a), states that the Commission must review and act on adopted standards "within 120 days from the date of receipt of adopted standards." We conclude that the Legislature contemplated that automatic approval by the Commission could occur only if the adopting agency affirmatively adopted the building standards and forwarded them to the Commission. If the Commission did not receive adopted standards from the adopting agency, as here, the Commission cannot be deemed to approve the standards through inaction. This ensures that building standards cannot be both deemed adopted by the adopting agency and deemed approved by the Commission with no determination by either the adopting agency or the Commission that the standards are appropriate.

d. *The Decision Was Not Procedurally Unfair.*

PPFA contends the decision was procedurally unfair because (1) the Agencies failed to adopt the model code within one year after its publication as required by Health and Safety Code section 18928, subdivision (b); (2) the Commission and the Agencies improperly delayed the decision to apply CEQA; (3) the Department of Housing and Community Development characterized its decision not to adopt the model code provisions allowing the use of PEX as "secret" and allowed counsel for the California State Pipe Trades

Council to participate in drafting a public notice; (4) the Governor appointed two new members to the Commission shortly before its hearing in May 2002, one of whom formerly represented a trade group promoting copper pipes, and the Governor received a substantial amount of campaign contributions from the California State Pipe Trades Council; (5) the Commission's hearing in May 2002 was a sham because the Commission "seemed predetermined to exclude PEX" and presented a "pre-printed motion" a copy of which had been given to the California State Pipe Trades Council; (6) the Agencies failed to make independent factual findings and acted under the direction of the Commission; (7) the Commission secretly authorized advance publication of the Code before the May 2002 hearing, so the hearing was a sham and the Commission's decision was predetermined; and (8) the Commission "threaten[ed]" to impose the costs of environmental review on PEX manufacturers without justification.

■ We reject the contention that the Agencies' failure to adopt the model code within one year after its publication as required by statute rendered the decision procedurally unfair so as to invalidate the Agencies' and the Commission's decision. Statutory time limits ordinarily are considered directory rather than mandatory and jurisdictional unless the Legislature clearly expressed a contrary intent. (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1145 [43 Cal.Rptr.2d 693, 899 P.2d 79].) ■ The California Building Standards Law does not provide that an agency's adoption of a model code is invalid if it occurs more than one year after the model code was published or that the Commission has no authority to approve building standards that were not timely adopted. ■ Moreover, statutory language that appears mandatory may be considered mandatory only in the sense that an administrative agency can be compelled to act if it fails to render a timely decision, but this does not mean that the agency has no jurisdiction to act after the deadline has passed. (*Id.* at pp. 1146–1147.) If depriving an agency of the power to act after a deadline has passed would defeat the purpose of the statute, a court should reject such a construction. (*Ibid.*) We conclude that to deprive an agency of the power to adopt a model code more than one year after its publication would deprive the Commission of the agency's considered opinion and application of the agency's expertise, and would defeat the purpose of the statute.

We reject PPFA's second contention concerning procedural unfairness in part 4 *post*. The other contentions concerning alleged undue influence, a sham hearing, and the like are only unsubstantiated allegations and cannot justify the invalidation of the Commission's or the Agencies' decisions.

3. *CEQA Applies to Proposed Building Standards Allowing the Use of PEX.*

 "CEQA is a comprehensive scheme designed to provide long-term protection to the environment. [Citation.] In enacting CEQA, the Legislature declared its intention that all public agencies responsible for regulating activities affecting the environment give prime consideration to preventing environmental damage when carrying out their duties. [Citations.] CEQA is to be interpreted 'to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.' [Citation.]" (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 112 [65 Cal.Rptr.2d 580, 939 P.2d 1280].)

 CEQA defines a "project" as an activity that may cause a direct or reasonably foreseeable indirect physical change in the environment and that is either directly undertaken by a public agency, undertaken by another person with assistance from a public agency, or involves the issuance by a public agency of a permit or other entitlement. (Pub. Resources Code, § 21065; Guidelines,[6] § 15378, subd. (a).) CEQA applies to any discretionary project proposed to be carried out or approved by a public agency, unless the project is exempt. (Pub. Resources Code, § 21080, subd. (a).) A regulation fitting the description of a discretionary project is a discretionary project under CEQA. (*Wildlife Alive v. Chickering* (1976) 18 Cal.3d 190, 206 [132 Cal.Rptr. 377, 553 P.2d 537] [held that the enactment of regulations by the Fish and Game Commission fixing the dates of a hunting season was a project subject to CEQA]; see Pub. Resources Code, § 21000, subd. (g); Off. of Planning and Research, com. foll. Guidelines, § 15378 ["With some activities carried out by government, the plan, control, or regulation being adopted may need to be regarded as the project even though the plan, etc., is being adopted to control activities to be initiated later by other people"];[7] *Dunn-Edwards Corp. v. Bay Area Air Quality Management Dist.* (1992) 9 Cal.App.4th 644, 657–658 [11 Cal.Rptr.2d 850], disapproved on another ground in *Western States Petroleum Assn v. Superior Court, supra,* 9 Cal.4th at p. 576, fn. 6, [held that the enactment of regulations relating to architectural coatings was not categorically exempt under CEQA].) Whether an activity constitutes a project under CEQA is a question of law that can be decided de novo

---

[6] All references to Guidelines are to the CEQA Guidelines (Cal. Code Regs., tit. 14, § 15000 et seq.) developed by the Office of Planning and Research and adopted by the California Resources Agency. (Pub. Resources Code, §§ 21083, 21087.) "[C]ourts should afford great weight to the Guidelines except when a provision is clearly unauthorized or erroneous under CEQA." (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 391, fn. 2 [253 Cal.Rptr. 426, 764 P.2d 278].)

[7] The discussions of the Guidelines prepared by the Office of Planning and Research are not part of the California Code of Regulations, but are available on the Internet at <http://ceres.ca.gov/ceqa> [as of Dec. 22, 2004].

based on the undisputed evidence in the record. (*Black Property Owners Assn. v. City of Berkeley* (1994) 22 Cal.App.4th 974, 984 [28 Cal.Rptr.2d 305].)

 PPFA contends the enactment of regulations allowing the use of PEX is not a project because the causal link between the enactment of regulations and a physical change in the environment is too remote. PPFA argues that PEX is only one of several materials available for plumbing uses and that at this time there is no certainty that PEX will be used in any particular work of construction. A project, however, includes an activity that "may cause . . . a reasonably foreseeable indirect physical change in the environment." (Pub. Resources Code, § 21065.) Thus, an activity need not cause an immediate environmental impact to be considered a project. We conclude that the regulations here at issue may have a reasonably foreseeable indirect environmental impact for the reasons expressed by Reid.

 PPFA contends the statutory time limits for adoption and approval of building standards do not allow time for environmental review, so the Legislature impliedly exempted the activity from CEQA. The Legislature has expressly exempted certain activities from CEQA (e.g., Pub. Resources Code, § 21080, subd. (b); see Guidelines, § 15260 et seq.) and has authorized the California Resources Agency to enact Guidelines establishing other categorical exemptions based on the finding that the activities do not have a significant effect on the environment (Pub. Resources Code, § 21084, subd. (a); see Guidelines, § 15300 et seq.). Absent an express statutory or categorical exemption, however, we cannot infer an exemption unless we discern a clear legislative intent to exempt the activity. (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230 [32 Cal.Rptr.2d 19, 876 P.2d 505]; *Wildlife Alive v. Chickering, supra,* 18 Cal.3d at p. 195.) The California Supreme Court in *Wildlife Alive* rejected the argument that time restraints imposed by the Fish and Game Code on the enactment of hunting regulations indicated a legislative intent to exempt the activity from CEQA. The court noted that the statutory period of 50 to 70 days to hold public meetings, consider comments, and enact final regulations was sufficient time for environmental review under CEQA. (*Wildlife Alive, supra,* at p. 200.)
 Similarly, we conclude that the statutory period of one year after the date of publication of a model code for an adopting agency to adopt or propose adoption of the model code (Health & Saf. Code, § 18928, subd. (b)) is sufficient time for environmental review under CEQA, and that the 120-day period after receipt of adopted building standards for the Commission to approve building standards (*id.,* § 18931, subd. (a)) is sufficient time for

environmental review under CEQA.[8] PPFA has not shown an irreconcilable conflict between CEQA and the adoption and approval of building standards under the Building Standards Law and therefore has not shown a legislative intent to exempt the activity.

PPFA also contends to apply CEQA in these circumstances would not achieve CEQA's goal of informing the public about the environmental consequences of a decision before the decision is made because PEX already is widely in use.[9] The essence of this argument is that the enactment of statewide regulations allowing the use of PEX for buildings regulated by the Agencies would cause no direct or reasonably foreseeable indirect physical change in the environment (Pub. Resources Code, § 21065) because PEX already is widely in use. We reject this argument because on this record we cannot conclude that the enactment of these regulations would cause no direct or reasonably foreseeable indirect physical change in the environment.

### 4. *The Decision to Conduct Review Under CEQA Was Proper.*

An agency must conduct a preliminary review to determine whether CEQA applies to a proposed activity. (Guidelines, § 15060, subd. (c); *Association for a Cleaner Environment v. Yosemite Community College Dist.* (2004) 116 Cal.App.4th 629, 636 [10 Cal.Rptr.3d 560].) If the agency determines that the activity is a discretionary project that may result in a direct or reasonably foreseeable indirect physical change in the environment and that the activity is not exempt, the agency must either prepare an initial study or proceed directly to the preparation of an environmental impact report (EIR). (Guidelines, §§ 15002, subd. (k), 15060, subds. (c) & (d), 15061, 15063, subd. (d); *Association for a Cleaner Environment, supra,* at pp. 639–640.)

An initial study is a preliminary analysis to determine whether an EIR or a negative declaration must be prepared and to identify the environmental effects to be analyzed in an EIR. (Guidelines, §§ 15063, 15365.) An agency preparing an initial study must consult with all responsible agencies and trustee agencies responsible for resources affected by the project. (Pub. Resources Code, § 21080.3, subd. (a); Guidelines, § 15063, subd. (g).) An initial study includes in summary form a description of the project and its environmental setting, an identification of environmental effects, a discussion of potential mitigation measures, and an examination of the project's consistency with zoning regulations and other land use controls. (Guidelines, § 15063, subd. (d).)

---

[8] We need not decide whether the Commission or each adopting agency is the lead agency for purposes of CEQA.

[9] The parties dispute the extent to which PEX has been used in California.

An agency's decision whether to prepare an initial study is subject to judicial review under the abuse of discretion standard. (Pub. Resources Code, § 21168.5; *Association for a Cleaner Environment v. Yosemite Community College Dist., supra,* 116 Cal.App.4th at p. 636.) Abuse of discretion means the agency did not proceed in a manner required by law or there was no substantial evidence to support its decision. (Pub. Resources Code, § 21168.5.)

PPFA argues that the Commission did not decide to conduct an initial study, but merely decided that the proposed approval of the use of PEX may result in a significant environmental effect and decided to prepare "a proposed procedure for a coordinated state review of PEX consistent with CEQA." Regardless of whether we construe the Commission's decision as a decision to conduct a preliminary review to determine whether an initial study was warranted or a decision to conduct an initial study, the abuse of discretion standard applies and our conclusion is the same. We conclude that substantial evidence supports the Commission's decision. The Reid letter is substantial evidence that the use of PEX potentially may result in the release of contaminants into the soil, groundwater, and drinking water, mechanical failure, and the spread of fire. The decision by the Commission and the Agencies to consider further the application of CEQA was proper.

Contrary to PPFA's argument, the Commission's and the Agencies' failure to commence CEQA review earlier in the rulemaking process does not compel them to forgo environmental review. CEQA contains no automatic approval provision, and its time limits are directory rather than mandatory. (*Eller Media Co. v. City of Los Angeles* (2001) 87 Cal.App.4th 1217, 1221 [105 Cal.Rptr.2d 262].)

Finally, PPFA contends the Commission and the Agencies improperly split the project by deciding to apply CEQA only with respect to the proposed adoption by the Agencies of building standards allowing the use of PEX and not with respect to other agencies' adoption of building standards allowing the use of PEX or with respect to other plumbing materials. This is not a valid argument to forgo environmental review. Rather, this is an argument to broaden the scope of the review. PPFA did not timely petition for a writ of mandate challenging the Commission's decision to approve other agencies' adoption of building standards allowing the use of PEX or the Commission's approval of building standards allowing the use of other plumbing materials, and therefore cannot challenge the absence of environmental review of those decisions. (Pub. Resources Code, § 21167, subd. (a).) In any event, the decision to conduct CEQA review does not foreclose the possibility of expanding the scope of any ensuing environmental analysis to encompass a larger project, if appropriate.

## DISPOSITION

The judgment is reversed with directions to the superior court to vacate the peremptory writ of mandate issued on February 13, 2003, and enter a judgment denying the petition for writ of mandate. Appellants are entitled to recover their costs on appeal.

Klein, P. J., and Aldrich, J., concurred.